110 N.J. Super. 297 (1970)
265 A.2d 404
WILLIAM H. GRAY, III, PLAINTIFF,
v.
SERRUTO BUILDERS, INC., A NEW JERSEY CORPORATION, MR. LAURENCE AND MRS. LAURENCE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 30, 1970.
*299 Mr. Samuel E. Bass for plaintiff (Messrs. Freeman & Bass, attorneys).
Mr. Yale Manoff for defendants (Messrs. Weinberg and Manoff, attorneys).
HERBERT, J.S.C.
Plaintiff, a black man, complains that his efforts to rent an apartment were rejected because of his race. He sues for a mandatory injunction that a suitable apartment be made available to him, and for compensatory and punitive damages. Defendants are Serruto Builders, *300 Inc., a New Jersey corporation which owns the apartment buildings in question, and Mr. and Mrs. Laurence, the superintendent of the buildings and his wife.
Plaintiff comes here without having made any application to the Division on Civil Rights for relief under the Law Against Discrimination (N.J.S.A. 18:25-1 et seq. at the time the alleged cause of action arose; now N.J.S.A. 10:5-1 et seq. For the sake of convenience, all references hereinafter will be to the statute as it is currently numbered.) Defendants challenge the jurisdiction of this court on the basis of that act, asserting that the administrative proceedings there provided are to be exclusive of all others for the redress of civil rights violations. Apparently this issue has never been directly posed before.
I think defendants' assertion is without merit. N.J.S.A. 10:5-27 states in relevant part:
Nothing contained in this act shall be deemed to repeal any of the provisions of the civil rights law or of any other law of this State relating to discrimination because of race, creed, color, national origin or ancestry or liability for service in the armed forces of the United States; except that, as to practices and acts declared unlawful by section eleven of this act, the procedure herein provided shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.
The Law Against Discrimination was apparently intended to supplement, rather than replace, previously existing law in the field of civil rights. The quoted statutory language makes the jurisdiction conferred by the act exclusive only when an administrative proceeding is pending or has been concluded, and not where, as here, such a proceeding has never been instituted. This view finds support in the case of Jackson v. Concord Company, 54 N.J. 113 (1969), where, in the context of an opinion holding that the Director of the Division on Civil Rights has authority to award an aggrieved individual money damages for out-of-pocket *301 expenses incurred as a result of discrimination against him, Justice Hall said for the Supreme Court:
It thus appears, without dealing completely with all the ramifications of the exclusive remedy provisions of this section, that the complainant here, by pursuing his grievance to completion in the Division, would be barred thereafter from whatever action at law for out-of-pocket losses he might have had by reason of respondents' unlawful discrimination against him. [at 128; emphasis added]
The inference to be derived is that a complainant does have access to the courts until such time as he chooses to pursue his grievance administratively.
Moreover, despite defendants' assertion that plaintiff is basing his cause of action solely upon the New Jersey Law Against Discrimination, plaintiff's claim in fact is much broader. The complaint states defendants discriminated "in violation of Federal laws and State laws and Federal constitutional rights and State constitutional rights of the plaintiff, William H. Gray, III, and Common Law rights of the plaintiff, and in violation of N.J.S.A. 18:25-1 et seq. and N.J.S.A. 18:25-4 * * *."
Whatever effect the Law Against Discrimination might be argued to have on actions for the redress of civil rights violations under state law, the statute cannot interfere with this court's jurisdiction to decide plaintiff's claims based on federal law. Cf. Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947), in which the United States Supreme Court held that a state court cannot decline to entertain an action to enforce a valid federal penal law.
Having concluded that the challenge to the jurisdiction must fail, I turn to the proofs on discrimination. In September 1967 plaintiff went to the Williamsburg Apartments  the buildings owned by defendant Serruto Builders  and met Laurence, the superintendent. He asked to see and was shown a one-bedroom apartment. He decided it would be suitable for his needs and made an offer to take it for three years at a rental somewhat lower than the rate *302 quoted to him by Laurence. That offer was rejected but plaintiff did not lose interest. Thereafter he made a number of other attempts to get an apartment in the Williamsburg buildings, none of which was successful.
About the middle of December 1967 plaintiff got in touch with the Montclair Fair Housing Commission. On December 16th he was informed by the Commission that apartments were available. He went at once to the Williamsburg Apartments accompanied by the chairman of the board of trustees of the Union Baptist Church of Montclair, a church of which plaintiff is the senior minister. Mrs. Laurence answered the door of the superintendent's apartment and then summoned her husband. Plaintiff again asked Laurence about a one-bedroom apartment. The reply was to the effect that plaintiff should not worry, that he was at the top of the list of applicants and might expect to hear from his application very soon. Plaintiff mentioned the vacancy sign which he had seen on his way to the door of the Laurence apartment. Laurence responded that the sign should come down and would be taken down right away, then went on to say that the next vacancy of a one-bedroom apartment was anticipated in June. After this meeting plaintiff went back to his office at the church. The time was about two-thirty or three in the afternoon.
About three-thirty that afternoon Dr. Bernard A. Koechlin and his wife were sent to the Williamsburg Apartments. They were members of the fair housing group and went in that capacity. They are white. After going to the superintendent's apartment and meeting Laurence they were shown two different apartments  both of the one-bedroom type  which were for rent. They were told by Laurence that one of these could be occupied as of January 1, the rental being $210 a month including garage and storage space in the basement. They were told that the other would be available on February 1. Defendants did not deny at trial the charges that apartments were offered *303 to a white couple on December 16, 1967 after plaintiff had been told earlier in the afternoon of that day that no apartments were available. No witnesses were called by defendants.
Thus plaintiff's proofs stand uncontradicted and unexplained. From the evasive refusal to show an apartment to plaintiff on December 16, coupled with the treatment given to Dr. and Mrs. Koechlin later the same afternoon, discrimination against plaintiff by reason of his color can be inferred; and I find that he was discriminated against because he is black.
It does not follow as a matter of course from a finding of racial discrimination that plaintiff has a cause of action. Having chosen to make no use of the administrative remedies provided by our legislation (N.J.S.A. 10:5-1 et seq.), he cites no other statute explicitly authorizing civil remedies, but relies instead on the common law doctrine that remedies should be available when established rights have been encroached upon. As plaintiff claims, the law is clear that there should be no racial discrimination in the sale or rental of housing accommodations.
42 U.S.C.A. § 1982 provides:
All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.
This statute, first enacted in 1866, has recently been held by the United States Supreme Court to bar all racial discrimination, private as well as public, in the sale or rental of property. The court's opinion by Mr. Justice Stewart upheld the statute's constitutionality, not on the basis of the Fourteenth Amendment to the United States Constitution, which requires "state action," but on the basis of the Thirteenth Amendment, which has been construed to authorize legislative elimination of "the badges and the *304 incidents of slavery." Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). The court was apparently untroubled by the lack of remedial provisions in section 1982 and held it to be a sound basis for the injunctive relief sought by Mr. and Mrs. Jones. The opinion contains no discussion of the issue in its text, but does say this in a footnote:
The fact that 42 U.S.C. § 1982 is couched in declaratory terms and provides no explicit method of enforcement does not, of course, prevent a federal court from fashioning an effective equitable remedy. [392 U.S. at 414, 88 S.Ct. at 2190, 20 L.Ed.2d at 1193, fn. 13]
Jones v. Alfred H. Mayer Co., did not, however, require the court to rule upon the availability of damages as a remedy for a violation of 42 U.S.C.A. § 1982 and that question was expressly reserved. 392 U.S. at 414, 88 S.Ct. 2186, 20 L.Ed.2d at 1193, fn. 14. Since its decision in that case, the United States Supreme Court has considered and approved of damages as a remedy under 42 U.S.C.A. § 1982. Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). There Mr. Justice Douglas said in his opinion for the majority:
We held in Jones v. Alfred H. Mayer Co. that although § 1982 is couched in declaratory terms and provides no explicit method of enforcement, a federal court has power to fashion an effective equitable remedy. 392 U.S., at 414, n. 13, 88 S.Ct., at 2189. That federal remedy for the protection of a federal right is available in the state court, if that court is empowered to grant injunctive relief generally, as is the Virginia court.

* * * * * * * *
Congress, by 28 U.S.C. § 1343(4), created federal jurisdiction for "damages or * * * equitable or other relief under any Act of Congress providing for the protection of civil rights * * *." We reserved in Jones v. Alfred H. Mayer Co., 392 U.S., at 414-415, n. 14, 88 S.Ct., at 2190, the question of what damages, if any, might be appropriately recovered for a violation of § 1982.

* * * * * * * *
Compensatory damages for deprivation of a federal right are governed by federal standards, as provided by Congress in 42 U.S.C. § 1988, * * *.

*305 * * * * * * * *
This means, as we read § 1988, that both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes. Cf. Brazier v. Cherry, 5 Cir., 293 F.2d 401. The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired. We do not explore the problem further, as the issue of damages was not litigated below. [at 238, 90 S.Ct. at 405, 24 L.Ed.2d at 393-394)
The opinion quoted with approval language from Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), and Texas & P. Ry. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916), to the effect that courts will fashion appropriate remedies for the violations of established rights, and that these remedies may properly include an implied right to money damages.
The Sullivan case was originally commenced in Virginia's state courts. It clearly confirms the view that damages are available in state courts for violations of 42 U.S.C.A. § 1982. It also supports, by its language and by analogy, the view that damages are an appropriate remedy even though not expressly authorized by statute, when individuals are aggrieved by violation of their established rights under other statutory and constitutional provisions.
Though I doubt the need to look beyond Jones v. Alfred H. Mayer Co. and Sullivan v. Little Hunting Park, Inc. for authority to support a determination that plaintiff here has a cause of action based on the racial discrimination practiced against him, and that relief in the form of an injunction or damages or both may be given, much more authority may be cited.
N.J.S.A. 10:5-12, like 42 U.S.C.A. § 1982, is explicit in its prohibition of private racial discrimination in the sale or rental of real property:
It shall be * * * an unlawful discrimination:

* * * * * * * *
g. For the owner, lessee, sublessee, assignee or managing agent of, or other person having the right of ownership or possession of *306 or the right to sell, rent, lease, assign, or sublease any real property or part or portion thereof, or any agent or employee of any of these:
(1) To refuse to sell, rent, lease, assign, or sublease or otherwise to deny to or withhold from any person or group of persons any real property or part or portion thereof because of the race, creed, color, national origin or ancestry of such person or group of persons; * * *.
The statute is firmly based on our state constitution:
All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those * * * of acquiring, possessing, and protecting property * * *. [N.J. Const., (1947), Art. I, par. 1.]

* * * * * * * *
No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right * * * because of religious principles, race, color, ancestry or national origin. [N.J. Const. (1947), Art. I, par. 5]
The power of a court to enforce rights conferred by the New Jersey Constitution, even in the complete absence of implementing legislation, has been settled. Cooper v. Nutley Sun Printing Co., Inc., 36 N.J. 189, 196 (1961). The right of employees to organize and bargain collectively, as declared in Art. I, par. 19 but without remedies being specified, was there held enforceable and it was said that an appropriate judgment, after the taking of proofs, might include an injunction restoring the discharged employee to his position and an award for lost pay. Can it be said that a judicial remedy for violation of an established right is to be implied only where no other adequate remedy has been furnished by the Legislature, or that creation by statute of administrative procedures for relief, though expressly nonexclusive (N.J.S.A. 10:5-27), eliminates the need for a court-fashioned remedy like that of Cooper? The good sense, from a policy standpoint, of an affirmative answer to this question is plain enough. Plaintiff could have pursued the administrative remedies provided, and thus could have obtained an award for his proven damages as well as *307 an order that he be accepted as a tenant. Courts are busier than they should be to function at their best  a condition which gets worse, not better  and it may be said that they should not be expected in a well-ordered scheme of government to do things which other agencies have been instructed to do and are equipped to do. However, to hold the existence of nonexclusive administrative relief is a bar to judicial relief would conflict with the intent if not the letter of N.J.S.A. 10:5-27, and I take the view that plaintiff has a cause of action based upon paragraphs 1 and 5 of Article I of New Jersey's Constitution and upon N.J.S.A. 10:5-12(g).
In Raison v. Board of Education, Berkeley Tp., 103 N.J.L. 547 (Sup. Ct. 1927), a judicial remedy was made available although administrative enforcement processes were not used. On demurrer to an alternative writ of mandamus it appeared that the relator sought to have his child enrolled at a public school from which the child had been excluded because of color. The court noted that the right to be admitted to a public school was "perfectly clear," held that the court could pass over the respondent's point that the relator had not made use of existing administrative machinery, and overruled the demurrer.
Outside of New Jersey a number of cases have been found which support the conclusion that plaintiff Gray has a cause of action for violation of his civil rights.
Wills v. Trans World Airlines, Inc., 200 F. Supp. 360 (S.D. Cal. 1961), recognized a federal cause of action for an airline passenger who has been subjected to undue preference or unjust discrimination. The cause of action was based on the Civil Aeronautics Act of 1938 and the Federal Aviation Act of 1958, although neither contained any specific authorization for private remedies for aggrieved individuals. The court in its opinion relied heavily on a decision to the same effect by the Court of Appeals for the Second Circuit in Fitzgerald v. Pan American World Airways, 229 F.2d 499 (1956), and said:
*308 The rationale of the decision in Fitzgerald, supra, is that inasmuch as the Civil Aeronautics Act makes it a Federal crime to violate its provisions * * * the case falls within the doctrine which permits treatment of a criminal statute as creating a Federal cause of action in favor of members of the class for whose protection the statute was enacted.

* * * * * * * *
This doctrine, that specific statutory authority is not an essential prerequisite to the existence of power in the Federal courts to grant relief in damages to enforce the object or purposes of a particular statute, has ample support in precedent.

* * * * * * * *
Without judicial intervention to redress past violations of the statute, the rights of air passengers, as declared in the Act, to travel without undue preference or unjust discrimination would be robbed of vitality and the purposes of the Act substantially thwarted. It cannot be presumed, nonetheless, that the Congress intended no relief for past infringement of the Federal rights of air passengers there declared.

* * * * * * * *
Every pertinent consideration of reason and policy, therefore, points to the compelling desirability of permitting a Federal cause of action to the aggrieved passenger as a needed force to assure full compliance with the requirements of the Act. [Citations omitted]
In Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 (1927), the court held unconstitutional a Texas statute barring Negroes from participating in Democratic primary elections. The court held further that an action for damages could be maintained against judges of the election by one unlawfully denied the right to vote on the basis of that statute. Mr. Justice Holmes in his opinion placed little reliance on federal statutes authorizing a private cause of action. He seemed instead to base the right of recovery primarily on the Equal Protection Clause of the Fourteenth Amendment.
Hague v. Committee for Industrial Organization, 101 F.2d 774 (3 Cir.1939), modified on other grounds, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, dealt with an action to redress the deprivation under color of state law of the constitutional and statutory federal rights of free speech, peaceful assembly and freedom from unreasonable searches and seizures. The sole relief sought by plaintiff was injunctive, *309 and money damages were not an issue except as they affected the $3,000 jurisdictional amount required by the federal court. In the course of his opinion for the Third Circuit Court of Appeals, Judge Biggs said by way of dictum that plaintiff's cause of action was supported by federal statute and, further, that irrespective of any federal statutes "a right of action in the individual for damages for loss of political rights existed at common law" [citing Nixon v. Herndon, supra]. 101 F.2d at 789.
Another instance of damages for a wrongful interference with voting rights is Wayne v. Venable, 260 F. 64 (8 Cir.1919). The case seems to rest squarely on the right to sue for a violation of fundamental constitutional rights. Judge Sanborn wrote for the Eighth Circuit Court of Appeals:
The right of qualified electors to vote for a member of Congress at a general state election, which is also an election at which a Congressman is to be lawfully voted for and elected, is a right `fundamentally based upon the Constitution [of the United States], which created the office of member of Congress, and declared it should be elective, and pointed to the means of ascertaining who should be electors.

* * * * * * * *
An action for damages in the proper federal court lies by a qualified elector for his wrongful deprivation of this right by a defendant or by an effective conspiray of several defendants who deprive him thereof. [at 66]
A case very close to the case before me is Anderson v. Pantages Theater Co., 114 Wash. 24, 194 P. 813 (Sup. Ct. 1921). There an action for damages was brought by a black plaintiff alleging that he was wrongfully denied a seat in defendant's theater solely on account of his color. The Supreme Court of Washington held that plaintiff made out a civil cause of action on the basis of a penal statute prohibiting discrimination in public accommodations. The court said in its opinion by Justice Fullerton:
This statute, while penal in form only, is both penal and remedial in its nature and effect. In addition to providing for a criminal *310 punishment of proprietors of such places for discriminating against the admission thereto of persons on account of race, creed, or color, it confers rights upon the individual  it confers upon all persons, regardless of their race, creed or color, the right to be admitted to the places enumerated on equal terms with all others.
The person wrongfully discriminated against also has a civil remedy against the person guilty of the wrongful discrimination. A contrary contention was made under a similar statute in Ferguson v. Gies, 82 Mich. 358, 46 N.W. 718, 9 L.R.A. 589, 21 Am. St. Rep. 576. Answering the contention, the court said:
"But it is claimed by the defendant's counsel that this statute gives no right of action for civil damages; that it is a penal statute; and that the right of the plaintiff under it is confined to a criminal prosecution. The general rule, however, is that, where a statute imposes upon any person a specific duty for the protection or benefit of others, if he neglects or refuses to perform such duty, he is liable for any injury or detriment caused by such neglect or refusal, if such injury or hurt is of the kind which the statute was intended to prevent. * * *." [194 P. at 815]
Anderson v. Pantages Theater Co. has been followed in Washington by Browning v. Slenderella Systems of Seattle, 54 Wash.2d 440, 341 P.2d 859 (Sup. Ct. 1959). Browning concerned an action brought by a Negress for the emotional injuries she allegedly suffered as a result of defendant's racial discrimination against her. The Supreme Court of Washington had little difficulty finding on the facts before it that plaintiff was not served in turn at defendant's reducing salon solely because of her race or color and that this was a violation of Washington's public accommodation statute. The court held that a private cause of action for damages could arise from a violation of that statute, notwithstanding the fact that it was criminal in form, saying:
This court * * * takes the position that the statute, while penal in form, is remedial in its nature and effect and gives to the person wrongfully discriminated against a civil remedy against the person guilty of wrongful discrimination. Anderson v. Pantages Theatre Co., supra.

* * * * * * * *
Neither [established] administrative procedures, nor the penal provisions preclude the bringing of a civil action for damages, as is done here, for the violation of a right protected by the penal statute. [at 863]
*311 Still another case supporting a cause of action for the plaintiff here is Pleasants v. N.B. & M.R.R. Co., 34 Cal. 586 (Sup. Ct. 1868), where plaintiff was denied access to defendant's street car because she was colored. In an opinion primarily discussing the quantum of damages allowable, the court simply stated without discussion that a wrongful violation of plaintiff's right would entitle her to damages. 34 Cal. at 590. And in Nash v. Air Terminal Services, 85 F. Supp. 545 (E.D. Va. 1949), the federal district court held that plaintiff would have a cause of action for damages if, as alleged, she was refused service in a dining room and coffee shop at an airport solely on account of her color. A motion to dismiss that part of the complaint dealing with such claim for damages was overruled.
Only one case has been found in which a private cause of action was not recognized on the basis of a statute creating an allegedly violated right, and that case is distinguishable. The case is Bachrach v. 1001 Tenants Corp., 21 App. Div.2d 662, 249 N.Y.S.2d 855 (App. Div. 1964), affirmed 15 N.Y.2d 718, 256 N.Y.S.2d 929, 205 N.E.2d 196 (Ct. App. 1965), where the Administrative Code of the City of New York was held to create administrative remedies and judicial remedies on the initiative of an administrative agency in cases of discrimination in housing accommodations, but not private or individual remedies. The decision turned on the court's determination that the Legislature affirmatively intended to exclude individual remedies under the Code.
The foregoing review of cases leads to the conclusion that, without Jones v. Alfred H. Mayer Co. and Sullivan v. Little Hunting Park, Inc., the weight of authority supports plaintiff's contention he has a cause of action which is enforceable in this court. Discrimination having been found as a fact, he is entitled to an injunction; but there are still questions to answer about his right to damages on the allegations made and proofs presented. The complaint alleges "anguish," "embarrassment" and "personal sense of *312 the attempt of degradation of [plaintiff's] rights as a citizen." No proof was offered of conventional money damages. Plaintiff has not claimed he paid higher rent at another location, or had expense for travel or for anything else because he was not living at the Williamsburg Apartments, or that he lost time from his work or paid medical bills.
The specific question of money damages for mental suffering caused by racial discrimination has not yet been decided in New Jersey. Jackson v. Concord Company, supra, upheld an award of damages for the additional rental and traveling expenses complainant incurred because he was wrongfully denied an apartment, but the Supreme Court there was not faced with and did not consider the question of compensation for mental suffering. Moreover, the court in Jackson was concerned with the authority of the Director of the Division on Civil Rights to award any damages at all under the statute; the opinion in no way indicates the permissible bounds of recovery in common law judicial proceedings.
New Jersey cases have long recognized, however, that mental suffering in one form or another is a proper basis for an award of money damages.
In Harris v. D.L. & W.R.R. Co., 77 N.J.L. 278 (Sup. Ct. 1909), plaintiff sought damages for the "indignity" and "ignominy" he suffered when defendant's conductor took away his commutation ticket. The railroad claimed in its defense that plaintiff had wrongfully permitted other passengers to use the ticket. In the course of his opinion for the court, Justice Swayze said:
It is argued on behalf of the plaintiffs in error that it was erroneous to allow recovery of damages for the indignity and ignominy. The suggestion is that these damages are limited to personal torts and cannot be allowed where the tort is merely the conversion of personal property. We are unable to see the distinction on principle. In the case of injuries to the person, indignity and ignominy are the almost necessary accompaniment. In injuries to personal property *313 the tort would not so often, perhaps not generally, be accompanied with circumstances of indignity and ignominy, but it may be so accompanied, and we think such a case is now presented.

* * * * * * * *
We think that where the indignity is the natural and proximate result of the conduct of the defendant, damages should be recovered, and in a case where a railroad company takes up a passenger's ticket illegally and in a public manner, with circumstances virtually amounting to an imputation of fraud, a proper case is presented. In this respect we find no error. [at 280-281]
The decision below was reversed on other grounds and remanded for a retrial. The second time around the case finally came before the Court of Errors and Appeals (82 N.J.L. 456), which commented on the question of damages as follows:
[T]he authorities are at one that in the action of trespass, which is based on the taking being violent in contemplation of law, compensatory damages are recoverable for humiliation and indignity accompanying the wrongful act. [at 458]
In Spiegel v. Evergreen Cemetery Co., 117 N.J.L. 90 (Sup. Ct. 1936), plaintiffs sued for damages caused by defendant's failure to inter the remains of their deceased father in the proper plot and in their presence. The court held that the right to bury the dead and preserve the remains is a quasi right in property, the infringement of which may be redressed by an action in damages. With regard to plaintiffs' claim to damages for mental anguish, the court stated in its opinion by Justice Heher:
One utterly indifferent to the natural and probable consequences of such conduct will not be heard to say that he did not intend them. A reckless disregard by the wrongdoer of the legal rights of the victim is properly classable as an intentional infringement  a willful wrong. And where, as here, a grievous injury to the feelings is reasonably certain to follow, that injury is presumed to have been intended, and the consequent mental suffering is compensable.

* * * * * * * *
This was a wrongful invasion of plaintiffs' relative rights, springing from the civil and domestic relations. It was a "legally protected interest" of the plaintiffs, the tortious invasion of which is *314 actionable and makes the actor liable for mental or emotional distress. See Torts, A.L.I., §§ 47 (b) and (c). [at 96]
Kuzma v. Millinery Workers, etc., Local 24, 27 N.J. Super. 579 (App. Div. 1953) was an action brought by a husband and wife against a labor union and some of its individual members, charging them with having wrongfully contrived to obtain the wife's discharge from her employment. The Appellate Division held that the trial court had jurisdiction of plaintiffs' common law tort action notwithstanding the fact that the union's conduct may have constituted an unfair labor practice under the National Labor Relations Act. Further, the court held that damages were recoverable for the wife's mental anguish and emotional distress, saying:
As already indicated, where a discharge from employment is caused by the wilful, malicious and oppressive act of another, those results which may be said to be the natural and proximate consequences are compensable. Spiegel v. Evergreen Cemetery Co., supra. More specifically, consequences which are reasonably foreseeable by the tortfeasor measure the responsibility. Since it is foreseeable that a wrongful act, such as charged here, may produce mental anguish and illness, in our present state of society it is equally within the field of reasonable foresight that the mental anguish and illness of an employed wife may burden her husband with medical expenses and deprive him of her services and consortium. [at 592-593]
Morris v. MacNabb, 25 N.J. 271 (1957), allowed compensatory damages for plaintiff's shame, humiliation and mental anguish caused by the defendant's inducing her by fraud to enter into a marriage which he knew would be bigamous. The court (at 280) stressed in its opinion that the damages were recoverable due to the fact that the alleged wrong was willful and malicious rather than merely negligent, but this distinction is no longer wholly valid.
The old common law rule that damages for fright and mental anguish are not recoverable for negligent, as opposed to willful, torts unless there has been a physical impact was reputiated by the New Jersey Supreme Court in Falzone *315 v. Busch, 45 N.J. 559 (1965). There Justice Proctor said for the court:
We hold, therefore, that where negligence causes fright from a reasonable fear of immediate personal injury, which fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, the injured person may recover if such bodily injury or sickness would be regarded as proper elements of damage had they occurred as a consequence of direct physical injury rather than fright Of course, where fright does not cause substantial bodily injury or sickness, it is to be regarded as too lacking in seriousness and too speculative to warrant the imposition of liability. [at 569]
This requirement of "substantial bodily injury or sickness" does not appear in the cases of willful misconduct.
Racial discrimination is necessarily willful rather than negligent, and so the harmful results it causes should not have to be proven to be "substantial" under Falzone v. Busch. Indignity must be the natural, proximate, reasonable and foreseeable result of racial discrimination. As such, it should be held compensable under the Harris, Spiegel, Kuzma and Morris cases discussed above. This result would comport with the rule generally prevailing in other jurisdictions that a plaintiff is entitled to recover either nominal or actual damages for mental suffering caused by racial discrimination.
In Browning v. Slenderella Systems of Seattle, supra, it was said:
Damages may be had for mental or emotional distress, even in the absence of any physical injury, when caused by a wrongful act intentionally done.

* * * * * * * *
An act of discrimination in violation of a statute must be classed as a wrongful act intentionally done. [341 P.2d at 863]
While actual damages will be awarded when they can be proved, nominal damages will be presumed from the encroachment of an established right. The court in Spiegel v. Evergreen Cemetery Co., supra, said:
*316 It is the established rule in this state that wherever there is a breach of contract, or the invasion of a legal right, the law ordinarily infers that damage has ensued. And, in the absence of actual loss, the law vindicates the right by awarding nominal damages. The injury imports damage. [117 N.J.L. at 96-97]
In Browning v. Slenderella Systems of Seattle, supra, the facts were close to that of the present case in that there was no public humiliation of any kind. Only nominal damages were allowed. Judge Hill's opinion describes the circumstances of the defendant salon's refusal to serve the Negro plaintiff as follows:
The entire record upon the question of damages in this case is that the plaintiff was embarrassed by not being served in her turn and being conscious of the fact that it was because of her color. In the plaintiff's words, it was "Just the total embarrassment of the whole situation." The defendant's receptionist, and the manager, were courteous to her at all times, although evasive as to when she could be served. There was no public humiliation; none of the other women in the reception room was aware that there was an act of discrimination. The plaintiff's conversation with the manager took place in the foyer between the reception room and the treatment rooms, where no one could overhear what was said.

* * * * * * * *
The effect of the discrimination was, of course, purely subjective. [341 P.2d at 865]
The court ruled that under these circumstances a judgment for $750 was excessive, and damages were reduced to the nominal amount of $100.
For another case lacking in aggravating circumstances and limiting compensation for mental suffering to nominal damages, see Wills v. Trans World Airlines, Inc., supra, where Judge Mathes wrote:
While actual damages for violation of a person's right to travel as a passenger aboard an interstate air carrier may include compensation for plain and blatant instances of humiliation and outrage suffered * * *, the evidence at bar is not sufficient to warrant a conclusion that the outrage occasioned by plaintiff's removal from flight 77 was such as to justify an award intended to compensate for plaintiff's hurt feelings as an item of actual damages.

*317 * * * * * * * *
When as here the extent and nature of injury to one's feelings by public outrage cannot be established, an award of actual damages for such injury should not be granted. [200 F. Supp. 366-367]
On the other hand, Wright v. Chicago, Burlington & Quincy R.R. Co., 223 F. Supp. 660 (N.D. Ill. 1963), was also a case lacking public humiliation, excessive rudeness and other aggravating circumstances, and yet the court there allowed plaintiffs more substantial damages. Each of the two Negro plaintiffs was allowed $500 compensatory damages for the humiliation, pain and anguish suffered as a result of discrimination practiced against them in the sale of tour tickets.
In a case with a different context, Morris v. MacNabb, supra, a jury verdict of $1,500 compensatory damages was upheld for the mental anguish allegedly suffered by a plaintiff fraudulently induced into a bigamous marriage. Apparently the sole basis for the valuation was the plaintiff's own testimony that as a result of the bigamous marriage and attendant publicity she was embarrassed and "ashamed to get out," "couldn't sleep" and "couldn't eat,"' "had terrific headaches" and "lost quite a lot of weight." (25 N.J. at 281)
It is my judgment that plaintiff is entitled to damages as well as to an injunction. Though our New Jersey cases have placed some stress upon public and rude humiliation  factors not present here  those factors, either together or singly, are important because they are likely to produce more severe humiliation and anguish than polite or entirely private forms of discrimination would. Yet such aggravating circumstances are relevant only to the quantum of damages and do not go to the basic question of the availability of damages.
Dr. Davidson testified about the harmful effects of plaintiff's realization that he had been a victim of race prejudice. There was another expert witness, Dr. Burke, who dealt primarily with results of personality and psychological *318 tests, but I find his testimony of little help because of what to me seems a lack of connection between his findings and the particular discrimination which is the subject matter of this case. On the whole, the testimony as to damages did not persuade me that the legal injury suffered calls for compensation by a money judgment in any substantial amount. That in a sense is a tribute to plaintiff himself. Having had exceptional educational opportunities he has had the character and ability to take advantage of them. He earned a Bachelor of Arts degree at Franklin and Marshall College in 1963. Thereafter he studied at Drew Theological Seminary where he was awarded the Bachelor of Divinity degree. Since leaving Drew he has pursued, on a part-time basis, post-graduate studies at Princeton Theological Seminary. At Franklin and Marshall he was a varsity athlete in a number of sports and was co-captain of the basketball team. His parents were people of education and accomplishment. He is now and for some time has been the senior minister of the Union Baptist Church of Montclair. This record of accomplishment by one still quite young is matched by the impression plaintiff makes in person. He is a man not likely to be bowled over by a single set-back.
With torts involving bodily force, a blow hard enough to injure seriously an aged or frail person  and, of course, be a basis for substantial damages  might be borne by a strong man with no bad effects beyond a temporary, though painful, bruise. I think plaintiff's position in this case is that of the strong man, not that of the weakling.
It should be noted also that part of plaintiff's irritation came from his dealings with a tenant who was trying to sublet. Plaintiff by mistake attributed to the management of the apartments a newspaper advertisement run by that tenant. No agency between the tenant and the management has been established.
Though it is difficult to have a feeling of assurance about an exact figure, I think a damage award of $500 to plaintiff is appropriate.
*319 Plaintiff's claim to punitive damages is denied. The record shows discriminatory conduct on December 16, 1967 by defendant Laurence. He was an employee of the owner. Beyond concluding that Laurence's conduct supports a finding that discrimination was practiced, I have no way of knowing why he did what he did. It may be asked whether he followed orders (perhaps against his own inclination), or acted on his own initiative, or had taken a personal dislike to plaintiff; but no question of this class can be answered from this record. Plaintiff was the victim of an intentional tort inflicted by an employee who was acting in the course of his real or apparent authority, but there is no general rule that punitive damages are to be allowed for all intentional torts. There must be an exceptional case involving circumstances and attitudes described recently in Di Giovanni v. Pessel, 55 N.J. 188, 190 et seq. (1970).
The judgment to be presented for signature should order defendant Serruto Builders, Inc., to accept plaintiff as a tenant on the same terms quoted in 1967. The time in which the order is to be carried out shall be long enough to enable plaintiff to complete, or otherwise end, the term of any lease he now has, and to permit him to have a fair selection of Serruto's apartments.
It should be clearly understood that Serruto Builders, Inc., as a wrongdoer, must accommodate itself to the reasonable convenience of the plaintiff in adjusting the date an apartment will be ready for him to a date when he becomes legally free of an existing tenancy and ready to move into it.
The judgment will charge both Serruto Builders, Inc. and Laurence with payment of $500 in damages as well as costs. However, Laurence's complete name will have to be supplied.
The case is dismissed as to Mrs. Laurence with costs, no evidence of wrongdoing by her having been presented.