Darla G. HALL, Patty J. Baxter and Jeannette Ticknor, Appellees,

v.

GUS CONSTRUCTION CO., INC. and John Mundorf, Appellants.

No. 87–1900.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1987.

Decided March 25, 1988.

---

Russell L. Samson, Des Moines, Iowa, for appellants.

Mark W. Bennett, Des Moines, Iowa, for appellees.

Before GIBSON, BOWMAN, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Gus Construction Co., Inc. and one of its foremen, John Mundorf, appeal from a judgment[1] imposing liability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982), and the Iowa Civil Rights Act, Iowa Code Chapter 601A

---

1. The Honorable R.E. Longstaff, United States Magistrate for the Southern District of Iowa. The parties consented to the assignment to a magistrate pursuant to 28 U.S.C. § 636(c) (1982).

(1985), for their having failed to protect Darla Hall, Patty Baxter, and Jeannette Ticknor from sexual harassment by their coworkers. The hostile and abusive working environment resulted in the women's constructive discharge. On appeal, appellants challenge the sufficiency of the evidence and the award of damages for emotional distress under the Iowa statute. We affirm.

Mundorf hired Ms. Hall, Ms. Baxter and Ms. Ticknor in April 1984 to work for Gus Construction Co. as "flag persons" or traffic controllers at road construction sites in various Iowa counties. All of the women were in their thirties. Ms. Baxter and Ms. Hall were single mothers who sought this employment so as to be better able to support young children. No other women worked on the crew. One flag person stood at one end of the section of the road under construction, another at the other end, and the third drove a pilot truck leading the motor vehicle traffic through the construction area.

Immediately after the women started work, male members of the construction crew began to inflict verbal sexual abuse on the women. The men incessantly referred to the women as "fucking flag girls." The men nicknamed Ms. Ticknor "Herpes" after she developed a skin reaction due to a sun allergy. On one occasion, Ms. Baxter returned to her car and found the name "Cavern Cunt" written in the dust on the driver's side, and "Blond Bitch" written on the passenger side where Ms. Hall sat. Male crew members repeatedly asked Ms. Hall if she "wanted to fuck" and requested that Ms. Hall and Ms. Baxter engage in oral sex with them. Mundorf was present during some of these incidents, and on one occasion used the term "fucking flag girls." Each of the women told Mundorf that the verbal abuse offended and upset her. Mundorf talked to the crew members about their conduct, but the verbal abuse soon resumed and continued up to the time the women quit their jobs.

In addition to the verbal abuse, male coworkers subjected Ms. Hall and Ms. Baxter to offensive and unwelcomed physical touching. Male crew members would corner the women between two trucks, reach out of the windows and rub their hands down the women's thighs. They grabbed Ms. Hall's breasts. One crew member picked up Ms. Hall and held her up to the cab window so other men could touch her. Mundorf observed this incident but did nothing.

All three women also experienced other types of abuse at work. Male crew members frequently pulled down their pants and "mooned" the women while they were working. One crew member exposed himself to Ms. Hall. Male crew members flashed obscene pictures of naked couples engaged in oral intercourse at the women. A male crew member urinated in Ms. Hall's water bottle. Several men urinated in the gas tank of Ms. Ticknor's car, causing it to malfunction. When carbon monoxide fumes leaked from the pilot truck causing the driver to become drowsy, the mechanic ignored the women's complaints. The women were forced to rotate their positions so that no one was in the truck for more than a short period of time. Later, a male crew member used the truck, and it was immediately repaired. Male crew members would refuse to give the women a truck to take to town for bathroom breaks. When the women would relieve themselves in the ditch, male crew members observed them through surveying equipment. Mundorf knew about this practice, but he disciplined no one.

The women quit their jobs with Gus Construction Co. in August 1984. After complying with the procedural prerequisites regarding right-to-sue notices from the Equal Employment Opportunity Commission (EEOC) and the Iowa Civil Rights Commission, the women commenced this action, claiming that they were constructively discharged from their employment as a result of the opprobrious conduct of their male coworkers and foreman Mundorf. After a bench trial, the magistrate found for the women. The court awarded the women back pay, damages for emotional distress and attorneys' fees.

## I.

Sexual discrimination that creates a hostile or abusive work environment is a violation of Title VII of the Civil Rights Act of 1964.[2] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66–67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). Unlike *quid pro quo* sexual harassment, which "occurs when submission to sexual conduct is made a condition of concrete employment benefits," *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir.1987), hostile work environment harassment arises when sexual conduct " 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Meritor Sav. Bank, FSB v. Vinson*, 106 S.Ct. at 2405 (quoting 29 C.F. R. § 1604.11(a)(3) (1985)). To prevail on a sexual harassment claim, a plaintiff must show that "(1) she belongs to a protected group, (2) she was subject to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a 'term, condition, or privilege' of employment, and (5) the employer knew or should have known of the harassment in question and failed to take proper remedial action." *Moylan v. Maries County*, 792 F.2d 746, 749 (8th Cir.1986) (citing *Henson v. City of Dundee*, 682 F.2d 897, 903–05 (11th Cir. 1982)). *See also Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309 n. 3 (5th Cir.1987); *Yates v. Avco Corp.*, 819 F.2d 630, 633 (6th Cir.1987).

Appellants argue that each of the women failed to prove all of the elements necessary to establish her sexual harassment claim.[3] Appellants concede that the women belong to a protected group. They contend, however, that in finding that the women were subject to unwelcome sexual harassment the district court erred in not

distinguishing between conduct of a sexual nature and other forms of harassment. Appellants also contend that the harassment against individual women was not sufficiently severe or pervasive to affect a condition of employment. They argue that the court erred by considering all three of the women's claims as a unit rather than individually. Finally, appellants contend that the offending crew members were not agents of Gus Construction Co.

■■■ We must assess the trial court's factual finding that the women were subjected to sexual harassment under the clearly erroneous standard of review. Fed. R.Civ.P. 52(a); *Yates v. Avco Corp.*, 819 F.2d at 634; *see also Chambers v. Omaha Girls Club, Inc.*, 834 F.2d 697, 702 (8th Cir.1987). We may reverse the district court's finding of sexual harassment only if we are " 'left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

■■ In arguing that only conduct of a sexual nature should be considered in a sexual harassment claim, appellants rely on the language of 29 C.F.R. § 1604.11(a) (1986), which defines sexual harassment as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Id.* Appellants point to various incidents that they contend were not sexual and should not have been considered. For example, they argue that calling Ms. Ticknor "Herpes" might have been cruel, but that it was not conduct of a sexual nature.[4] The incident in which the male crew members urinated

---

2. Title VII of the Civil Rights Act of 1964 declares that it is "an unlawful employment practice for an employer * * * to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S. C. § 2000e–2(a)(1) (1982).

3. Appellants assume that the elements of a sexual harassment claim under the Iowa Civil Rights Act are the same as under Title VII. Brief of Appellant at 9.

4. Appellants argue that the nickname "Herpes" is analogous to the appellation "Scarface," which Al Capone wore proudly but which might bother a more sensitive person. Brief of Appellant at 16.

in Ms. Ticknor's car's gas tank was a practical joke, they argue, not conduct of a sexual nature. Likewise, not fixing the pilot truck that gave off fumes was not conduct of a sexual nature and should not have been considered.

Although we have not previously considered this issue, other courts of appeals have held that the predicate acts underlying a sexual harassment claim need not be clearly sexual in nature. *See Hicks v. Gates Rubber Co.,* 833 F.2d at 1415 (evidence of threats of physical violence and incidents of verbal abuse—calling plaintiff "Buffalo Butt"—properly considered); *McKinney v. Dole,* 765 F.2d 1129, 1139 (D.C.Cir.1985) (acts of physical aggression properly considered). In *McKinney,* the court stated:

> We have never held that sexual harassment or other unequal treatment of an employee or group of employees that occurs because of the sex of an employee must, to be illegal under Title VII, take the form of sexual advances or of other incidents with clearly sexual overtones. And we decline to do so now. Rather, we hold that any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII.

*Id.* at 1138 (footnote omitted).

■ We agree with the rationale expressed in *McKinney,* and we hold that the district court correctly considered incidents of harassment and unequal treatment that would not have occurred but for the fact that Ms. Hall, Ms. Ticknor and Ms. Baxter were women. Intimidation and hostility toward women because they are women can obviously result from conduct other than explicit sexual advances. Title VII " 'evinces a Congressional intention to define discrimination in the broadest possible terms. Congress chose neither to enumerate specific discriminatory practices, nor to elucidate in extenso the parameter of such nefarious activities.' " *Firefighters Institute for Racial Equality v. City of St. Louis,*

549 F.2d 506, 514 (8th Cir.) (quoting *Rogers v. Equal Employment Opportunity Comm'n,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972)), *cert. denied* 434 U.S. 819, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977). In *Firefighters,* we held that the city's duty to provide a nondiscriminatory working environment required it to provide by regulation that on-duty firefighters would not be permitted to use city kitchen facilities if the firefighters' supper clubs excluded blacks from membership. *Id.* at 515. We cannot believe that had the supper clubs excluded women, the court would have held the exclusion not to be actionable because it was not "conduct of a sexual nature." Although appellants correctly note that the definition of sexual harassment in the EEOC regulation emphasizes explicitly sexual behavior, the regulations do not state that other types of harassment should not be considered. Furthermore, an enforcing agency's guidelines are not controlling upon the courts. *Meritor Sav. Bank, FSB v. Vinson,* 106 S.Ct. at 2405.

Appellants also argue that requiring a plaintiff to prove both "unwelcome sexual harassment" and that "the harassment was based on sex" implies that the harassment must be sexual in nature. We discussed the element of unwelcome sexual harassment in *Moylan v. Maries County,* 792 F.2d at 749, focusing on the word "unwelcome." "In order to constitute harassment, the conduct must be 'unwelcome' in the sense that the employee did not solicit or invite it, and the employee regarded the conduct as undesirable or offensive." *Id.* at 749. Thus, none of our previous cases hold that the offensive conduct must have explicit sexual overtones.

■ We also reject appellants' contention that the district court erroneously considered all of the women's claims together in determining that the harassment was sufficiently pervasive and severe to constitute a violation of Title VII. We are convinced that the harassment directed toward each woman was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working

environment. *See Meritor Sav. Bank, FSB v. Vinson,* 106 S.Ct. at 2406. Each of the women was subjected to a plethora of offensive incidents. The circumstances presented here are no less compelling than in other cases finding a hostile and abusive environment. *Compare Katz v. Dole,* 709 F.2d 251, 253–54 (4th Cir.1983) (coworkers inflicted sexual slurs, insults, and propositions on female air traffic controller, and supervisor heard coworkers direct obscenities to her); *Henson v. City of Dundee,* 682 F.2d at 899 (police chief repeatedly inquired into plaintiff's sexual proclivities); *with Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 622 (6th Cir.1986), (employee's poster displays of nude females and off-color language insufficient to alter condition of employment), *cert. denied,* —— U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). All of the women were subjected to sexual insults that were systematically directed to them throughout their employment with Gus Construction Co. Although Ms. Ticknor was not subjected to sexual propositions and offensive touching, evidence of sexual harassment directed at employees other than the plaintiff is relevant to show a hostile work environment. *Hicks v. Gates Rubber Co.,* 833 F.2d at 1415–16; *see also Jones v. Flagship Int'l,* 793 F.2d 714, 721 n. 7 (5th Cir.1986) (incidents of sexual harassment reported by other females bear on plaintiff's claim only if there is evidence that incidents affected plaintiff's psychological well-being), *cert. denied,* —— U.S. ——, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).

Appellants' final challenge to the district court's finding of sexual harassment is that the trial court erred in imposing employer and supervisory liability. Appellants argue that the offending employees were not agents of Mundorf or Gus Construction Co. and that the employees acted outside the scope of their employment. Appellants contend that to establish employer liability under the Iowa Civil Rights Act, the court must apply Iowa agency principles. Appellants rely on *Sandman v. Hagan,* 261 Iowa 560, 154 N.W.2d 113 (1967), where a plumber struck a sewer inspector with a shovel. The court held that the plumber acted outside the

scope of his employment because the employer's business was not furthered by the employee's violent act. *Id.* at 118.

In *Meritor,* the Supreme Court declined to announce a definitive rule on employer liability under Title VII, but determined that "Congress wanted courts to look to agency principles for guidance in this area." 106 S.Ct. at 2408. The Court reasoned that Congress' decision to define "employer" as any "agent" of an employer, 42 U.S.C. § 2000e(b), suggests that Congress did not intend to hold employers strictly liable for the acts of their supervisors. *Id.* But cf. 29 C.F.R. § 1604.11(c) (1986) (holding an employer liable for the acts of its agents without regard to notice). Nevertheless, "absence of notice to an employer does not necessarily insulate that employer from liability." 106 S.Ct. at 2408.

*Meritor* involved harassment by a supervisor. This case involves harassment mainly by coworkers. In *Hunter v. Allis–Chalmers Corp., Engine Div.,* 797 F.2d 1417, 1421 (7th Cir.1986), a race discrimination case, the court considered whether a corporation could be held liable for employment discrimination when the perpetrators of the harassment were the plaintiff's fellow workers. The court reasoned that a company cannot be held liable for an isolated racial slur. But a company will be liable if management-level employees knew, or in the exercise of reasonable care should have known, about a barrage of offensive conduct.

This principle is sometimes described incorrectly as an application of respondeat superior. Racial harassment is an intentional wrong, and the doctrine of respondeat superior makes an employer liable only for those intentional wrongs of his employees that are committed in furtherance of the employment; the tortfeasing employee must think (however misguidedly) that he is doing the employer's business in committing the wrong. It would be the rare case where racial harassment against a co-worker could be thought by the author of the harassment to help the employer's business.

But an employer is directly liable (that is, independently of respondeat superior) for those torts committed against one employee by another, whether or not committed in furtherance of the employer's business, that the employer could have prevented by reasonable care in hiring, supervising, or if necessary firing the tortfeasor. Consistent with this principle, an employer who has reason to know that one of his employees is being harassed in the workplace by others on grounds of race, sex, religion, or national origin, and does nothing about it, is blameworthy. He is unlikely to know or have reason to know of casual, isolated, and infrequent slurs; it is only when they are so egregious, numerous, and concentrated as to add up to a campaign of harassment that the employer will be culpable for failing to discover what is going on and to take remedial steps.

*Id.* at 1421–22 (citations omitted). *See also Taylor v. Jones,* 653 F.2d 1193, 1199 (8th Cir.1981) (holding employer liable for racially hostile working environment based on constructive knowledge).

In this case, Mundorf, as the agent of Gus Construction Co., had both actual and constructive notice of the campaign of harassment against the three women. Each of the women met with Mundorf individually to complain of the treatment they were receiving from their coworkers. The women also met with Mundorf as a group to discuss the hostile work environment. Furthermore, Mundorf observed many of the incidents. He knew that the men bombarded the women with sexual insults and abusive treatment. Even if Mundorf did not know everything that went on, the incidents of harassment here, as in *Hunter,* were so numerous that Mundorf and Gus Construction Co. are liable for failing to discover what was going on and to take remedial steps to put an end to it.

## II.

Appellants next contend that the district court erred in awarding damages for emotional distress under the Iowa Civil Rights Act, Iowa Code Chapter 601A. Specifical-

ly, they contend that a complainant in a civil rights case under Chapter 601A must make a showing equivalent to that required under the Iowa common law tort of intentional infliction of emotional distress. They also contend that Iowa Code § 601A.15(8)(a)(8) violates the Iowa Constitution by allowing the Iowa Civil Rights Commission to award damages without a jury trial. Appellees respond that these issues were raised for the first time on appeal and are therefore waived.

### A. *Necessary Showing*

In *Chauffeurs, Teamsters and Helpers, Local Union No. 238 v. Iowa Civil Rights Comm'n,* 394 N.W.2d 375 (Iowa 1986), the Iowa Supreme Court acknowledged that a "troublesome question exists as to the showing necessary" to establish a claim for emotional distress damages under the Iowa civil rights law. *Id.* at 383. The court noted that jurisdictions are split on this issue. *Id.* (citing *Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 498–99, 468 P.2d 216, 218–19, 86 Cal.Rptr. 88, 90–91 (1970) (requiring a showing of outrageous conduct); *Gray v. Serruto Builders, Inc.,* 110 N.J.Super. 297, 315, 265 A.2d 404, 414 (1970) (recovery allowed because emotional distress was proximately caused by racial discrimination); *Williams v. Joyce,* 4 Or. App. 482, 495, 479 P.2d 513, 519 (1971) (allowing recovery of emotional distress damages for injury proximately caused by racial discrimination)).

██ We need not resolve this issue, because we agree with appellees that it was not properly preserved for review. Appellants raised this issue for the first time on appeal.[5] Issue not presented to the trial court will not be considered on appeal. *Leftwich v. Harris-Stowe State College,* 702 F.2d 686, 691 (8th Cir.1983).

### B. *Constitutionality of § 601A.15(8)(a)(8)*

Appellants argue that the award of compensatory damages by an agency under § 601A.15(8)(a)(8) deprives the defendant of his constitutional right to a jury trial. Iowa Const. art. I, § 9. Individuals may

---

**5.** We note that present counsel for appellants did not represent appellants at trial.

bring an action under the Iowa Civil Rights Act in district court or at an administrative hearing. A court is permitted to award only such relief as the commission is authorized to award. *See* 601A.16(5). Appellants argue that agencies have no authority to award compensatory damages.

The Iowa Supreme Court has construed § 601A.15(8)(a)(8) as authorizing an administrative agency to award compensatory damages but has not decided whether the statute is constitutional. *Chauffeurs, Teamsters and Helpers, Local Union No. 238 v. Iowa Civil Rights Comm'n,* 394 N.W.2d at 382–83. The court noted, however, that other jurisdictions allow agencies to award compensatory damages. *Id.* at 382 n. 1.

 Appellants raised the constitutionality of § 601A.15(8)(a)(8) for the first time in a posttrial motion. The district court correctly noted that the issue could be considered waived because it was not addressed before trial. When the constitutionality of a statute is raised for the first time in a postjudgment motion, the trial court is correct in not considering the issue. *Logan v. Andrus,* 640 F.2d 269, 271 (10th Cir.), *cert. denied,* 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981). Likewise, an appellate court will not consider the issue on appeal. *Id. See also Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Dept. of Public Welfare,* 742 F.2d 442, 445 (8th Cir.1984) (state constitutional claims were not advanced in second amended complaint, and court did not consider them on appeal), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985); *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986) (motion to alter judgment cannot be used to raise arguments which could have been made before judgment issued). We therefore uphold the award of damages for emotional distress under the Iowa Civil Rights Act.

### III.

 Appellants' final assessment of error is that the damage awards for emotional distress were excessive. For the humiliation and distress of being harassed, the court awarded Ms. Ticknor $15,000, and Ms. Baxter and Ms. Hall, who had been subjected to physical touching, $20,000. In a bench trial, ascertaining the plaintiff's damages is a form of factfinding that can be set aside only if clearly erroneous. *Webb v. Arresting Officers,* 749 F.2d 500, 501–02 (8th Cir.1984). " '[T]he inadequacy or excessiveness of an award is basically a matter for the trial court. We have intervened only in those rare situations where we are pressed to conclude that there is "plain injustice" or a "monstrous" or "shocking" result.' " *Id.* (quoting *Occhino v. United States,* 686 F.2d 1302, 1305 (8th Cir.1982)).

 We conclude that awards of $15,000 and $20,000 do not constitute a shocking result. Similar amounts have been awarded in prior cases. *See, e.g., Hunter v. Allis–Chalmers Corp., Engine Div.,* 797 F.2d at 1425 (upholding an award of $25,000 for the humiliation and distress of being harassed and then fired on racial grounds); *Block v. R.H. Macy & Co.,* 712 F.2d 1241, 1245 (8th Cir.1983) (upholding $12,402 award for mental anguish, humiliation, embarrassment and stress). The district court found that the women "suffered considerable emotional distress, including embarrassment, humiliation, personal degradation and loss of self-esteem." Mem. op. and order at 16. We will not second-guess the trial judge's assessment of intangible harms.

### IV.

In affirming the district court's finding of liability and determination of damages, we note that the conduct and language complained of went far beyond that which even the least sensitive of persons is expected to tolerate in this era of generally impoverished discourse. In this day when certain so-called comedians command millions for spewing forth on film language of the drill field, perhaps each of us, consciously or not, has become inured to that which even two short decades ago might have been considered beyond the pale of colloquial speech. Title VII does not mandate an employment environment worthy of a Victorian salon. Nor do we expect that our holding today will displace all ribaldry on the roadway. One may well expect that in the heat and dust of the con-

struction site language of the barracks will always predominate over that of the ballroom. What occurred in this case, however, went well beyond the bounds of what any person should have to tolerate. These women acknowledged that they had anticipated hearing a good deal of profanity when they accepted their jobs as flag persons. Indeed, Ms. Baxter acknowledged that she, Ms. Hall, and Ms. Ticknor had probably uttered profanity themselves out on the job site. They did not expect, however, the unrelenting pattern of verbal, physical, and psychic abuse to which they were ultimately subjected. They gave fair notice of the intolerable conditions under which they were being forced to work and from which they were entitled to protection under Title VII. Having prevailed in the trial court on their claim of sexual harassment, they should not now be denied that which is their legal due.

The judgment is affirmed.