CHICAGO AND NORTHWESTERN
TRANSPORTATION COMPANY,
Appellant,

v.

IOWA TRANSPORTATION REGULA-
TION BOARD, a Division of the Iowa
Department of Transportation, Appel-
lee,

City of Sergeant Bluff, Iowa, A Munici-
pal Corporation, Intervenor.

No. 66435.

Supreme Court of Iowa.

July 21, 1982.

**274**

Frank W. Davis, Jr. and Marc P. Franson, of Gamble, Riepe, Burt, Webster & Davis, Des Moines, for appellant.

Ronald C. Polle, Des Moines, for appellee.

Robert R. Eidsmoe, of Gleysteen, Harper, Eidsmoe, Heidman & Redmond, Sioux City, for intervenor.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, McGIVERIN, and LARSON, JJ.

LARSON, Justice.

The Chicago and Northwestern Transportation Company operates a busy railroad line through the city of Sergeant Bluff, hauling coal. to a nearby power plant. Streets in the city have been blocked for substantial periods of time, causing consternation among motorists and, by impeding movement of emergency vehicles, posing a danger to the safety of the residents. The city fathers responded to ensuing complaints from their constituents by passing an ordinance, pursuant to Iowa Code § 327G.32 (1979), limiting the blockage of the streets to a maximum of five minutes. The railroad objected to the ordinance, pursuant to the statute. The Transportation Regulation Board first held the objection timely; it later reversed itself and concluded it was untimely, a view shared by the district court upon the railroad's petition for judicial review, Iowa Code ch. 17A. We affirm the district court.

The relevant facts are undisputed, and no issue is raised on the sufficiency of the evidence before the board to justify the order. The only issues raised concern the sufficiency of the notice sent to the railroad to advise it of the city's action in passing the crossing ordinance, as required by section 327G.32. Specifically, the arguments are: (1) section 327G.32 is unconstitutional as applied; (2) the board failed to enact rules under section 327G.32 prescribing the contents and manner of service for such notice, thereby vitiating its later proceedings; (3) the railroad's objection was timely; and (4) if it was not timely, the delay was the result of mistake, inadvertence, surprise, or other circumstances, which excuse the railroad's failure to object earlier.

Section 327G.32 provides the procedure for passing a crossing ordinance. Under it, a railroad may not be operated in such a manner to obstruct vehicular traffic on a street for more than ten minutes, except in certain enumerated circumstances not involved here; in addition, a city may further regulate the length of blocking time by resolution or ordinance if it can demonstrate such restriction "is necessary for public safety or convenience." Section 327G.32 then provides:

If such a resolution or ordinance is passed the political subdivision shall within thirty days of the effective date of the resolution or ordinance notify the [Transportation Regulation Board] and the railroad corporation using the crossing affected by the resolution or ordinance. *The resolution or ordinance shall not become effective unless the board and the railroad corporation are notified within thirty days.* The resolution or ordinance shall become effective thirty days after such notification unless a person files an objection to the resolution or ordinance with the board. If an objection is filed the board shall hold a hearing according to the rules established by the board. The board may disapprove the resolution or ordinance if public safety or convenience does not require such a resolution or ordinance. The resolution approved by the political subdivision shall be prima facie evidence that the resolution is adopted to preserve public safety or convenience.

(Emphasis added.)

The statute does not specify what is to be included in the notice, or the manner in which it is to be served. It merely requires that the railroad and the board be "notified" within thirty days of the passage of a crossing ordinance. We have had no prior occasion to interpret this language, which was added by amendment, 1977 Iowa Acts ch. 103, § 62. The provision for notice is so broad it would be difficult to argue the city's letter, which was sent to a representative of the railroad, did not comport with its requirements, and the railroad does not take that position. Rather, it argues that the notice here deprived it of a valuable

property right without due process. Notice of the ordinance was sent the day following the city's action, by certified mail, with return receipt requested, to the railroad's trainmaster at Sioux City. The mailing consisted of a copy of the crossing ordinance and a cover letter, which stated: "Pursuant to the provisions of section 327G.32 of the Iowa Code, enclosed please find a copy of [the crossing] ordinance . . . enacted by the City of Sergeant Bluff on April 12, 1979." The trainmaster, who was also the railroad's "general agent," was on vacation when the letter was received by his office on April 16th. His chief clerk signed a receipt for the letter in the trainmaster's name, and sent it the next day to the railroad's assistant vice president and division manager in Boone, where it was received the following day, April 18th. Under section 327G.32 the railroad had thirty days after notification to file an objection to the ordinance, but no responsive action was taken by it until after the thirty-day period.

I. *Preservation of errors.*

The railroad makes several subarguments under the heading of due process: (1) section 327G.32 requires "actual receipt" of a copy of the crossing ordinance; (2) the statute and the due process clauses of the federal and state constitutions require the notice to inform a railroad it has a right to object to the ordinance, and that it must object within thirty days from the date of its receipt, or lose that right; (3) the statute "on its face and as applied" suffers from vagueness and overbreadth; (4) the board was precluded from sua sponte reconsidering and reversing its initial decision that the railroad had timely objected to the ordinance; and (5) "a hearing on the merits was required that could not preclude the [railroad] as an interested party even if its objection was not timely" since another railroad, no longer a party to this litigation, timely objected to the ordinance. We believe, however, that error on the issue of due process was properly preserved only on the form and method of notice.

*(A) Due process.* At the stages of agency rehearing and review in the district court the railroad raised two arguments for the first time. First, in its application for rehearing, § 17A.16(2), the railroad argued that section 327G.32, as applied, violated due process (apparently under both federal and state constitutions). (No order granting the application was entered, and under section 17A.16(2) the application was deemed denied twenty days after its filing.) Second, in its petition for judicial review, § 17A.19, the railroad argued that section 327G.32 was unconstitutional on its face. The city argues that the railroad's failure to earlier raise these arguments constituted a waiver of any error, and that this court should not consider them.

■ We have stated that in contested cases "our review is limited to those questions considered by [the administrative agency.]" *General Telephone Co. v. Iowa State Commerce Commission,* 275 N.W.2d 364, 367 (Iowa 1979). As one authority has stated:

It is a general rule subject to some limitations and exceptions, that an appellate court will consider only such questions as were raised and reserved in the lower court. The same principle, based upon the demands of orderly procedure and the justice of holding a party to the results of his own conduct, where to do otherwise would surprise his opponent and deprive him of an opportunity to contest an issue in the tribunal which by law is supposed to decide it, and often embraced in specific statutory provisions, applies on review by courts of determinations of administrative agencies so as to preclude from consideration questions or issues which were not properly raised in the proceedings before the agency.

2 Am.Jur.2d *Administrative Law* § 724, at 624 (1962) (footnotes deleted); *accord,* 73 C.J.S. *Public Administrative Bodies* § 246, at 613 (1951). *Cf. Temple v. Vermeer Manufacturing Co.,* 285 N.W.2d 157, 159 (Iowa 1979) (in reviewing contested cases, "issues not presented to the district court cannot be presented for determination for the first time before this tribunal"). Under this rule it appears the argument presented in the railroad's petition for judicial review, that the statute was unconstitutional on its face, was not preserved.

■ However, there is a separate question whether the argument first raised in the application for agency rehearing was preserved. Although the argument the statute as applied violated due process was not raised in the initial proceeding before the board, the board had the opportunity to consider it when the railroad filed its application for rehearing. Thus error on this ground was preserved since the railroad's application was deemed denied by the board's refusal to grant it. *See General Telephone Co.,* 275 N.W.2d at 367.

*(B) Vagueness; Overbreadth.* On appeal the railroad argues section 327G.32 suffers from vagueness and from "overbreadth," (which generally refers, in the context of the first amendment, to regulations that "sweep unnecessarily broadly and thereby invade the area of protected freedoms," *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325, 338 (1964)). Whatever the railroad intends by these arguments, it has raised them for the first time on appeal, thereby precluding this court's review. *See Temple,* 285 N.W.2d at 159.

■ *(C) Preclusion (res judicata).* On appeal the railroad complains the board could not, sua sponte, reverse its original decision that the railroad had timely objected to the ordinance. It concludes the board abused its discretion by shifting its position, thus violating section 17A.19(8)(g). This ground was not raised in the district court and thus was waived. *See Temple,* 285 N.W.2d at 159. In any event, neither chapter 17A nor case law interpreting it precludes an agency from later reconsidering its own findings made at a prehearing conference.

*(D) Status as an "interested party."* On appeal the railroad asserts a hearing on the merits was required under chapter 327G because another railroad, notwithstanding

the subsequent withdrawal of its objection, timely objected to the ordinance. Again, this ground was not presented to the district court and as such, was waived. *See Temple*, 285 N.W.2d at 159.

## II. *Notice and due process.*

As previously noted, section 327G.32 generally limits blockage of streets to ten minutes, subject to further reduction upon showing of its necessity for public safety or convenience. Thus, blockage of streets by trains passing through the city was limited to ten minutes even before passage of the new ordinance; the railroad argues, however, the additional five minutes of allowable blocking time is a valuable property right that may not be denied without due process.[1] We assume, without deciding, that the additional time is a property right subject to due process protection.

A. *Form of notice under section 327G.32.* The railroad argues the legislature intended that for purposes of the statute, notification is to be given in the manner prescribed by Iowa Rule of Civil Procedure 49(a) (service of an original notice). The board, referring to section 617.3 (service upon railroads may be made upon their general agents "wherever found"), rule 56.1(f) (service upon general or managing agents) and rule 82 (service of court papers by mail), held the notice was properly served on the railroad through its trainmaster. On appeal the board and the city contend a less-stringent form of notice is required under section 327G.32 than rule 49 because notice under it is not used to initiate an adversarial proceeding:

> In other words, the . . . legislature has apparently made the determination that there will be more of a burden on a particular party to provide adequate notice in situations where a person is in danger of being deprived of his rights, than in those situations where someone is being warned that he must take steps to establish that he has a right which is in danger of being lost.

The district court agreed with the city and the board on the form of notice, relying upon *Woodruff & Son v. Rhoton*, 251 Iowa 550, 101 N.W.2d 720 (1960).

In *Woodruff*, 251 Iowa at 552–53, 101 N.W.2d at 721–22, this court considered the analogous problem of service of notice to a mechanic's lienholder that he must bring suit to foreclose the lien within a prescribed period or lose that right:

> The sole issue raised in this appeal is the sufficiency of the demand notice served upon the [lienholder] by the defendant owners . . . measured by the requirements of section 572.28, Code of Iowa [1954, which provides:]

> \* \* \* \* \* \*

> "Upon the written demand of the owner . . . served on the lienholder requiring him to commence action to enforce his lien, such action shall be commenced within thirty days thereafter, or the lien and all benefits derived from shall be forfeited."

> \* \* \* \* \* \*

> [T]he following notice was served upon the [lienholder] by the Sheriff . . . . "DEMAND TO CHRIS THOMPSON: Demand is hereby made upon you to commence action to enforce the mechanic's lien filed by you . . . upon the following described real estate, . . . owned by the undersigned . . . ."

The lienholder argued the notice was defective under the statute since it failed to state the time for commencement of the action or the risk of forfeiture. While observing that "courts do not favor statutory construction that results in forfeitures," *id.* at 556, 101 N.W.2d at 724, we responded:

> A notice required by law must contain information which in the wisdom of the legislature is necessary to fully advise the other party of the action necessary or of the claim advanced. However, the issue here is whether this nonjurisdictional no-

---

1. The railroad also argues the ordinance has another constitutional infirmity: that it is a burden on interstate commerce. This argu-

ment was not raised before the board, however, and we do not consider it here. *See Temple*, 259 N.W.2d at 159.

tice is void for failure to comply with the specific requirements of the statute. It is not what we think the legislature should have required, but what it did require.

\* \* \* \* \* \*

The statute itself does not require that such information be set forth in the notice. It requires only that the demand be in writing, that it require the lienholder to commence action to enforce his lien, that it be made by the owner or his agent or contractor, and that it be served on the lienholder. The statute then provides that unless an action to foreclose shall thereafter be commenced within thirty days, the lien and all benefits that might be derived from it shall be forfeited. These notices, in addition to complying with the specific statutory requirements above set out, identified the lien as well as the property involved. That was sufficient.

\* \* \* \* \* \*

Where, as here, the language of the statute is plain and clear, the legislature's intention to make these provisions effective to erase the lien granted by law in case the notice is ignored cannot be questioned. Specific reference to the time of limitation or the forfeiture is not required in the "demand notice." We are not permitted to search further for some other requirement or meaning in the language of the statute.

The general rule applicable as stated in most jurisdictions is that notices required by law given by one party to another party in order to establish rights and obligations must state with reasonable certainty the essential facts required by law. And the legislative intent must be ascertained from all the terms of the statute, related statutes, plus common sense and sound reasoning.

*Id.* at 554–55, 101 N.W.2d at 722, 723 (citations omitted).

The railroad attempts to distinguish *Woodruff* on the basis the notice requirement in section 327G.32 is "jurisdictional" and thus the district court's reliance on it was misplaced. The city contends the notice was not jurisdictional: "Legislative action such as the passage of a new administrative rule, ordinance, or act of the ... legislature, ha[s] never required personal service upon the person or class to be affected."

Nothing in chapter 327G indicates that notice under section 327G.32 confers any aspect of jurisdiction on the board. In fact, unless a newly-enacted ordinance is objected to within thirty days after notice is received, it becomes effective *automatically* after that period of time. Only if an objection is lodged is the board required to hold an evidentiary hearing.

In the instant case the mailing to the railroad's trainmaster recited that the city had passed a crossing ordinance, enclosed a copy of it, (which detailed how the railroad would be affected), and specifically referred to section 327G.32. This information was sufficient compliance with the statute since "the enactments of the legislature are notification to all concerned as to what they contain." *Woodruff*, 251 Iowa at 554, 101 N.W.2d at 722. The present case is thus distinguishable from *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), relied upon by the railroad. *Memphis Light* held notice to a utility customer that his service was to be terminated, without advising him of an available procedure for negotiating his dispute with an authorized utility representative, was insufficient to comport with due process requirements. The internal rules of the utility providing for resolution of disputes, in contrast to section 327G.32, were not generally available to the public.

B. *Method of service under section 327G.32.* Chapter 327 fails to specify in what manner notice under section 327G.32 is to be given; the statute merely states the affected railroad must be "notified within thirty days." As stated in *Buchholz v. Board of Adjustment*, 199 N.W.2d 73, 77 (Iowa 1972), "[w]hen notice must be given but no method is prescribed, [it] must be a reasonable one under the circumstances. It must afford a fair opportunity to apprise and object." *See* 2 Am.Jur.2d *Administra-*

*tive Law* § 417, at 228 (1962); 66 C.J.S. *Notice* § 18, at 661 (1950). *See also Roznos v. Town of Slater*, 254 Iowa 77, 83–85, 116 N.W.2d 471, 476 (1962). The railroad argues personal service on or restricted mail delivery to its general agent of the notice is required by the statute. The city argues that the tenor of the statute indicates service in the manner required for commencing a lawsuit was not intended, and that a letter sent by certified mail, "return receipt requested," was sufficient.

The railroad's argument is without merit for several reasons. Since we have concluded notice under the statute is nonjurisdictional, it would be anamolous to require personal service on an affected railroad. As the district court ruled, referring to rule 82(b) and the concept of "substituted service," it was appropriate for the city to mail the notice by certified mail to the railroad's trainmaster. Moreover, no more should be required than that required to commence a contested case, *viz.*, "by personal service as in civil actions *or by certified mail return receipt requested.*" § 17A.12(1) (emphasis added). In an analogous case, *North v. Kinney*, 231 Iowa 951, 2 N.W.2d 407 (1942), we held that under Iowa Code section 10161, (1939)—providing that the lessor of a farm tenancy must give written notice for termination to the lessee—notice was sufficient if sent by registered mail:

> The statute provides that notice be "given," not "served." * * * The word "give" as here used is, according to the dictionaries, the equivalent of "communicate." The notice is not a process or other formal notice incident to a proceeding in court. Had the legislature intended that the notice be served as an original notice for the commencement of an action, or in any other particular manner, it could easily have so stated, and we must conclude that the statute would have expressed that intent. We are asked to read such a provision into the statute. That is a legislative function which we have no right to assume.

*See also Flanders v. Waterloo Community School District*, 217 N.W.2d 579, 582 (Iowa 1974) (the general rule, where there is a statutory provision for written notice but no method is prescribed, is that "the method of transmitting the writing to the recipient is not important but receipt of the writing by the one to be notified is essential").[2]

III. *Hearing requirements imposed by federal and state constitutions.*

The railroad also argues the form and method of notice in this case violated a constitutional principle: "[W]hen a hearing is afforded [by constitution or statute] due process demands contestants be given notice thereof sufficient to permit a reasonable opportunity to appear and assert their rights." *Smith v. Iowa Employment Security Commission*, 212 N.W.2d 471, 473 (Iowa 1973); *see Schroeder v. New York*, 371 U.S. 208, 211, 83 S.Ct. 279, 281, 9 L.Ed.2d 255, 258 (1962); *see generally Auxier v. Woodward State Hospital School*, 266 N.W.2d 139, 142 (Iowa) *cert. denied*, 439 U.S. 930, 99 S.Ct. 319, 58 L.Ed.2d 324 (1978); 16A Am. Jur.2d *Constitutional Law* § 829, at 1018–20 (1979); 16A C.J.S. *Constitutional Law* § 619, at 804, 808–809, 810 (1956). The question in this case is whether the notice given by the city falls within that standard of reasonableness. *Roznos v. Town of Slater*, 254 Iowa 77, 116 N.W.2d 471 (1962) indicates that it was.

In *Roznos* the defendant municipality proposed to construct a new sewer system. A statute provided that in such circumstances it was required to "cause notice of the time when [a] resolution will be considered by it for passage" by publication. *See* Iowa Code § 391.24 (1958). Pursuant to this statute a notice was issued that advised those owners whose property was subject to assessment of the nature of the improvement and "prescribed the time and place for hearing objections thereto." The notice also incorporated a copy of the proposed resolution. When the owners' objec-

---

2. *But cf. In re Appeal of Elliott*, 319 N.W.2d 244, 247 (Iowa 1982) (mailing notice of appeal to district court for administrative agency in-sufficient where statute provided notice shall be "served," thus requiring actual delivery).

tions were overruled at the hearing they instituted an action to enjoin construction, alleging the notice violated due process because the attached resolution was either incomplete or erroneous in describing the streets involved, the specific location of the sewer line, and the materials and method of construction. The district court granted a motion to dismiss and this court affirmed, stating:

> [C]ertainly a notice which does not in some way direct the attention of property owners interested to the fact that *their property* is or may be within the taxing or assessment limit of the proposed improvement would be *too* obscure to be a notice at all.
>
> \* \* \* \* \* \*
>
> In the absence of a specific requirement in the statute (section 391.24) to set out in the notice all the requirements as to the resolution of necessity (section 381.18), we see no injustice or hardship in holding that, when one is notified that an attached resolution is pending before the council proposing a street improvement for which he can see his designated property will be assessed, and that opportunity is being offered for all who may think themselves aggrieved by such project to appear and make known their objections to it, one cannot ignore such notice or object to it alone on the plea that it is not as specific as he thinks it should be, and base his objection on the ground that he has not been given an opportunity to show cause why such improvement should not be made. To hold otherwise would seem to serve the purpose of unjust and unreasonable delay in this case.
>
> *Both the resolution and the plans and specifications were on file in the clerk's office and were public records open to inspection. Upon reading the notice actually received, each plaintiff must have known that his property was exposed to liability of assessment.* \* \* \* *[T]heir first impulse as men of even a low degree of caution would have been to apply at the office of the town clerk and satisfy their minds concerning it. If the terms*

*set out in the resolution had left them in doubt, they could have and as reasonable men should have resolved that doubt by further inquiry.* Their property was listed in the notice as adjacent and abutting property to be assessed for the sewer improvement.

This is not the case where there is lack of notice, which of course would be a jurisdictional defect. *The notice was given and received. It did not require the plaintiffs to guess whether or not their property was involved. . . .*

\* \* \* \* \* \*

We are satisfied it also complies with the constitutional requirements of due process, for it advises those whose property is subject to assessment as to the nature of the improvement and affords an opportunity for them to be heard.

254 Iowa at 84, 85, 86, 116 N.W.2d at 475, 476 (emphasis added) (citation omitted).

Applying the reasoning in *Roznos* to the facts of this case, the city's notice to the railroad was reasonable. It advised the railroad that it had enacted a new ordinance and specifically referred to section 327G.32 for authority, and the enclosed copy of the ordinance revealed that the railroad's property would be affected accordingly. The notice was mailed to the office of the railroad's trainmaster in the area, return receipt requested. Under such circumstances, form and method of notice was thus "reasonably calculated to accomplish its purpose." *Smith*, 212 N.W.2d at 473.

IV. *Adoption of rules for notice under section 327G.32.*

Section 327G.32 provides that upon objection to a newly-enacted ordinance a hearing shall be held "according to the rules established by the board." Similarly, section 17A.3(1)(b) provides:

> In addition to other requirements imposed by Constitution or statute, each agency shall:
>
> \* \* \* \* \* \*
>
> Adopt rules of practice setting forth the nature and requirements of all formal

and informal procedures available to the public, including a description of all forms and instructions that are to be used by the public in dealing with the agency. While the board has enacted rules governing the conduct of the hearings themselves, *see* 820 IAC ch. 12A, 12B, the railroad argues sections 327G.32 and 17A.3(1)(b) also require the board to issue specific rules governing the form and method of notification under section 327G.32. It concludes the board's failure to promulgate such rules substantially prejudiced it, in violation of section 17A.19(8). Without elaboration the district court concluded otherwise.

 Section 327G.32 plainly does not require the board to promulgate rules governing its notice provision: "If an objection is filed the Board shall hold a hearing according to the rules established by the Board." (Emphasis added.) The same reasoning applies to section 17A.3(1)(b): the statute only encompasses rules of practice for procedures "*available to the public,* including a description of all forms ... *used by the public* in dealing with the agency." (Emphasis added.) There is no requirement to issue rules to guide the agency; only that there be ones for the *public's* use. *See generally* Bonfield, *The Iowa Administrative Procedure Act,* 60 Iowa L.Rev. 760, 784–85 (1975). Neither section 327G.32 nor section 17A.3(1)(b) requires promulgation of rules to govern notice given by the board. Statutes that are not ambiguous leave nothing to be construed. *Compare* Iowa Code § 4.1(2) *with* § 4.6 (1981).

## V. *Mistake, inadvertence, excusable neglect.*[3]

The railroad states its failure to file a timely objection was tantamount to a default, Iowa R.Civ.P. 230, and thus it could be set aside:

> On motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside a default or the judgment there-

on, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty. Such motion must be filed promptly after the discovery of the grounds thereof, but not more than sixty days after entry of the judgment. Its filing shall not affect the finality of the judgment or impair its operation.

Iowa R.Civ.P. 236. The district court summarily dismissed this argument.

First, it appears rule 236 does not apply to judicial review of agency action. *See* § 17A.19(8). Second, even assuming it does apply, this argument was not presented within sixty days after the entry of judgment and thus was not timely. The district court did not err in refusing to order reinstatement.

AFFIRMED.

---

3. In its petition for judicial review the railroad argued these three reasons excused its failure to make timely objection under § 327G.32;

"surprise" and "unavoidable casualty" were added on appeal, and we do not consider them. *See Temple,* 285 N.W.2d at 159.