Glenn W. MULLETT, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 77–1310.

United States Court of Appeals,
Fourth Circuit.

Submitted Jan. 20, 1978.

Decided Feb. 28, 1978.

Patrick S. Cassidy, O'Brien & Cassidy, Wheeling, W. Va., on brief, for petitioner.

John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Howard E. Perlstein and Joseph A. Oertel, Attys., National Labor Relations Board, Washington, D. C., on brief, for respondent.

Before WINTER, BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

Glenn W. Mullett petitions for review of an order of the National Labor Relations Board dismissing his complaint against the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local Union No. 83, AFL–CIO.* Mullett charges that Local 83 violated §§ 8(b)(1)(A) and 8(b)(2) of the Labor Act, 29 U.S.C. §§ 158(b)(1)(A) and 158(b)(2), by causing his employer, Power City Plumbing and Heating, Inc. (Power), to fire him in violation of § 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), because he was not a member of Local 83. We set aside the Board's order

---

* The Board's decision and order are reported as Plumbers Local 83, 228 N.L.R.B. No. 27, 94 L.R.R.M. 1428 (1977). The parties stipulated that the petition for review should be submitted on briefs without oral argument.

and remand the case for further proceedings.

Mullett, a member of Local 789 of the plumbers' union of Princeton, West Virginia, applied for a job with Power in Wheeling, West Virginia. The president of the company told him to get clearance from the Wheeling Local 83 before he was hired. The business manager of Local 83, William A. Powell, refused to refer Mullett for employment because some members of the Wheeling local were unemployed. Soon afterwards, Mullett applied for membership in Local 83. His application was not approved so he filed a charge against the local, alleging that it had refused to refer him for employment. As a result of the charge, Powell wrote Mullett, sending copies to the Board's regional office and to Power, advising that the local "has never, nor does it now, have any objection to your obtaining employment" with Power. The letter noted that the union's agreement with Power provides that the company may hire whomever it pleases without obtaining union approval. Mullett's charge was then dismissed, and the company hired him.

On Mullett's first day on the job, Powell came to the site. In answer to an inquiry from Joseph Stiglich, the union's acting steward on that job, Powell stated that he had written a letter to Power saying that Mullett could come on the job. He did not tell Stiglich or the other union members who were present that Mullett had requested referral from the union. He concluded the discussion by telling the union members ". . . if you want to work with him, work, if you don't want to, that's up to you."

Philip E. Patrello, a member of Local 83's union conference board and the union's negotiating committee, was employed by Power at a different job site. After Mullett had worked two days, Patrello called Stiglich and three other members of the union to discuss Mullett's employment as a nonmember of Local 83. The next day, Stiglich and Frank Varvorosky, a union member under Stiglich's stewardship, walked off the job because of Mullett's presence. Stiglich told the foreman that he would come back to work if the foreman got Mullett off the job.

After leaving the job, Stiglich and Varvorosky drove to the union hall and told Powell that they had left work because Mullett was on the job. Powell replied, ". . . okay . . . I'm busy." In answer to their request to be referred to another job, Powell stated that he could not do so for about two weeks. Both men said that this was satisfactory.

Meanwhile, the company's foreman phoned the president, telling him that Stiglich and Varvorosky were going to take a couple of days off. He volunteered the information that he thought they were leaving because of Mullett. The president then summoned Mullett to his office and fired him, saying, "I have lost enough money through Local 83 and I can't tolerate it . . . for your own safety, contact your attorney."

Mullett then filed another charge against the union, and at the subsequent hearing, Stiglich testified that there was a "general understanding within the brotherhood" that if members of Local 83 were unemployed, people outside the local would not be allowed to work. Powell, of course, was aware of the union's policy. He testified:

Q. Did you hear the testimony concerning a union policy that when people, Local people are on the bench, outsiders cannot work?

A. [By Powell] Yes, sir, I heard that testimony.

Q. How is that policy implemented?

A. That policy is implemented by, I'll refer the people that are unemployed out first, the Local people that are unemployed.

The administrative law judge held that the union had caused the company to violate § 8(a)(3) of the Act by discharging Mullett and that by such conduct, the union had violated §§ 8(b)(2) and 8(b)(1)(A). The

Board, however, dismissed the complaint. It considered that Patrello and Stiglich had acted only as individuals to promote the work stoppage and that Local 83 could not be held responsible. The Board did not consider that Powell, the business agent, had involved the union in Mullett's dismissal.

■ The general principles governing this case are well established. Responsibility of a union for the acts of its officers or members may be established by common law rules of agency. Express authorization or ratification is not required; authority may be implied or apparent. *N.L.R.B. v. Local 3, I.B.E.W.*, 467 F.2d 1158, 1159 (2d Cir. 1972). Applying these principles to the administrative law judge's factual findings, we conclude that the Board's exoneration of the union cannot be sustained.

■ The union, through Powell, its admitted agent with authority to remove men from a job, encouraged and approved its members' actions. Powell's involvement of the union is manifested in several ways. Although his advice to the union members that it was up to them whether they continued to work with Mullett was couched in permissive terms, it had the effect of encouraging compliance with the union's custom of making sure that its members were employed before outsiders. *Cf. Truck Drivers and Helpers Local 728 v. N. L. R. B.*, 332 F.2d 693, 697 (5th Cir. 1964). Not surprisingly, when Powell learned from Stiglich and Varvorosky that they had accepted his advice, he expressly ratified their walking off the job because of Mullett's presence by saying: " . . . okay . . . I'm busy." Furthermore, he kept pressure on the company by taking no steps to replace the two men who quit even though one-sixth of the membership was then unemployed.

Stiglich was clothed with apparent authority by the union to enforce its custom pertaining to working with outsiders. As acting steward on the job, he had authority to complain to the employer about violations of the collective bargaining agreement. When he, accompanied by another employee, left the job after telling the fore-man that he was quitting because of Mullett's presence and that he would come back to work if the foreman got Mullett off the job, the company's president reasonably concluded that Stiglich was acting in behalf of the union and not simply as an individual. The fact that the grievance lacked merit and that Stiglich exceeded his actual authority to adjust it does not affect his apparent authority to act for the union. His role was not diminished because he was serving only as acting steward until a permanent replacement could be elected. *See N. L. R. B. v. Local 3, I.B.E.W.*, 467 F.2d 1158, 1160 (2d Cir. 1972); Restatement (Second) of Agency § 159 (1958).

We agree with the Board that the evidence fails to establish that Patrello acted as an agent of the union. Nevertheless, the conduct of either Powell or Stiglich was sufficient to prove that the union committed the unfair labor practices charged in the complaint. Accordingly, the order of the Board is set aside, and the case is remanded for proceedings consistent with this opinion.

