**CHAUFFEURS, TEAMSTERS AND HELPERS, LOCAL UNION NO. 238, Appellant,**

**v.**

**IOWA CIVIL RIGHTS COMMISSION, Appellee.**

No. 85–807.

Supreme Court of Iowa.

Oct. 15, 1986.

James W. Corcoran of Conley & Barrick, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Steven M. Foritano, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, CARTER, and LAVORATO, JJ.

McGIVERIN, Justice.

Petitioner, Chauffeurs, Teamsters and Helpers, Local Union No. 238, (Union) sought judicial review in district court of a decision of the respondent Iowa Civil Rights Commission (Commission) that the Union was guilty of discrimination against a person on the basis of race. The court ruled that substantial evidence supported the Commission's finding and did not address additional issues raised by the Union. Upon consideration of the issues presented in the Union's appeal, we affirm in part and reverse in part.

The Union is engaged in the representation of individuals under the National Labor Relations Act, 29 U.S.C.A. § 159 (1973), and is the certified bargaining representative of the employees of H.J. Heinz Company in Iowa City. Michael Daniels was an employee of H.J. Heinz from November 1978 to October 1, 1979.

On July 19, 1979, Daniels filed a complaint, Iowa Code section 601A.15(1) (1979), with the Iowa Civil Rights Commission alleging the Union had engaged in an unfair practice by discriminating against him on the basis of his race. *See* Iowa Code § 601A.6(1)(b). The Commission staff investigated the complaint and recommended a determination that probable cause existed for the complaint. Iowa Code § 601A.15(3)(a); 240 Iowa Admin. Code 1.5(1)(a). The hearing officer concurred with the recommendation on September 24, 1981. Iowa Code § 601A.15(3)(c).

Pursuant to the Iowa Civil Rights Act, Iowa Code chapter 601A, the Union and the Commission then attempted conciliation. Iowa Code § 601A.15(3)(d). When that was unsuccessful, the matter was set for hearing as a contested case. Iowa Code § 601A.15(5), (7). After an evidentiary hearing, the hearing officer entered proposed findings of fact and conclusions of law. Iowa Code § 601A.15(8). Therein, the Union was found guilty of discriminating against Daniels on the basis of his race and it was proposed that the Union be ordered to pay Daniels $15,000.00 in damages for emotional distress and $25,000.00 as exemplary damages. No back pay award was made because Daniels found suitable employment after leaving H.J. Heinz. The Union appealed to the Commission. Iowa Code § 17A.15(3). Following oral argument and the submission of exceptions and briefs, the Commission affirmed the decision of the hearing officer on September 20, 1984. Iowa Code §§ 17A.15(2), (3); 601A.15(7).

The Union filed a petition for judicial review of this decision in district court. Iowa Code §§ 601A.17(1); 17A.19. The Union contended the Commission's decision was not supported by substantial evidence, the Commission erred in awarding emotional distress and exemplary damages, and the award of exemplary and emotional distress damages by the Commission deprived the Union of its right of trial by jury. The district court affirmed the decision of the Commission, but limited its review to the issue of whether there was substantial evidence to support the Commission's decision. The court ruled that the Union failed to preserve error before the Commission on the other issues raised.

The Union has appealed the district court's ruling, Iowa Code section 17A.20, mainly contending: (1) the district court erred in concluding the Commission's decision was supported by substantial evidence; (2) the Commission did not have the authority to award damages for emotional dis-

tress; and (3) the Commission did not have the authority to award exemplary damages.

 Before we address these issues, we must treat two preliminary matters. The Union claims that state action on this labor dispute is preempted by the federal National Labor Relations Act. We have previously held that the NLRA does not preempt action by the civil rights commission in a sex discrimination setting. *Franklin Manufacturing Co. v. Iowa Civil Rights Commission,* 270 N.W.2d 829, 833–34 (Iowa 1978). We also conclude preemption is inapplicable in the present case because we have "an overriding [state] interest under the Iowa Civil Rights Act in protecting [our] citizens against discrimination." *Id.* at 833.

 Some issues concerning damages in the Union's appeal were not addressed by the district court on judicial review. We are faced with whether this court can address those issues on appeal. In *Barnes v. Iowa Department of Transportation,* 385 N.W.2d 260, 263 (Iowa 1986), we stated "[w]here the district court has not reached certain issues because they were deemed unnecessary to the decision under the rationale it elected to invoke," we may "in the interest of sound judicial administration" decide the issues where they have been fully briefed and argued. We, therefore, conclude that we will consider the Union's damages arguments on this appeal.

I. *Substantial evidence.*

A. *The framework for review.* The Union asserts the Commission's decision finding discrimination is not supported by substantial evidence. While the Union acknowledges some of the allegedly discriminatory acts, it contends it did not have responsibility for the acts and it did not have any duty to Michael Daniels concerning such acts. The Commission determined Daniels' relationship with the Union came within the meaning of Iowa Code section 601A.6(1)(b) and the Union acted discrimi-

natorily towards Daniels in violation of that section.

Section 601A.6 provides in pertinent part:

1. *It shall be an unfair or discriminatory practice for any:*

\* \* \* \* \* \*

b. *Labor organization or the employees, agents or members thereof* to refuse to admit to membership any applicant, to expel any member, or *to* otherwise *discriminate against* any applicant for membership or *any member in the privileges, rights, or benefits of such membership because of the* age, *race,* creed, *color,* sex, national origin, religion or disability *of such* applicant or *member.*

(Emphasis added.)

We have stated the principles concerning the burden and order of presentation of proof in civil rights cases in *Iowa State Fairgrounds Security v. Iowa Civil Rights Commission,* 322 N.W.2d 293, 296 (Iowa 1982), and *Linn Co-operative Oil Co. v. Quigley,* 305 N.W.2d 729, 732–33 (Iowa 1981).

 To establish a prima facie case of racial harassment the complainant must show: 1) the employee belongs to a protected class; 2) the employee was subject to unwelcome racial harassment; 3) the harassment was based upon race; 4) the harassment affected a term, condition or privilege of employment; and 5) the Union knew or should have known of the harassment and failed to take prompt remedial action. *Cf. Henson v. City of Dundee,* 682 F.2d 897, 909 (11th Cir.1982) (requirements for Title VII, 42 U.S.C.A. § 2000e et seq. (1981), sexual harassment case enumerated).

 The risk of nonpersuasion remains on the complainant during the proceeding. *Iowa State Fairgrounds Security,* 322 N.W.2d at 296. However, a prima facie case creates a presumption of discrimination which, if believed, will require the Commission to make a finding of discrimination. *Id.* The Union, once a prima facie case has been established, must dispel the

presumption by a showing of some legitimate, nondiscriminatory reason for the challenged action. *Id.* Complainant may then prevail in his ultimate burden of proof before the Commission by showing that the Union's articulated reason is really a pretext for discriminatory treatment. *Id.*

■ Judicial review of final civil rights commission action is governed exclusively by the Iowa Administrative Procedure Act. Iowa Code §§ 17A.19; 601A.17(1). The district court, and this court, in reviewing the agency decision in a contested case determines if there is substantial evidence in the record as a whole to support the decision. *Id.* at § 17A.19(8)(f); *City of Davenport v. Public Employment Relations Board,* 264 N.W.2d 307, 311 (Iowa 1978). "Evidence is substantial if a reasonable person would find it adequate to reach the given conclusion, even if a reviewing court might draw a contrary inference." *Mercy Health Center v. State Health Facilities Council,* 360 N.W.2d 808, 811–12 (Iowa 1985); *see also King v. Iowa Civil Rights Commission,* 334 N.W.2d 598, 602 (Iowa 1983).

B. *The record evidence before the agency.* As a black and a member of a minority race, Daniels belonged to a protected class. Daniels was the only black and one of only five non-union employees at Heinz. This caused some Union members to exert pressure on Daniels to join the Union. The record reveals the occurrence of the following acts during the ten months Michael Daniels worked at H.J. Heinz. He was referred to by other employees as "Toby," and the name "Toby" began to appear on notes on the bulletin board and in chalk on boxes and floors throughout the warehouse. The words "Toby" and "scab" were written by Daniels' name on the coffee list and overtime schedule. The name "Toby" was taken from the character who portrayed a slave in the story "Roots."

Cartoons and drawings which were derogatory to blacks were placed on the Union bulletin board in the Heinz lunchroom. One drawing depicted a split rail fence, watermelon patch, a stick figure with "KKK" written across its chest, and a black face labelled "Toby" looking around a tree. The words "Move on Toby!" were written on the drawing. Rod Hanson, the union steward, acknowledged placing the cartoons on the bulletin board.

Daniels also had problems with his locker. On one occasion Super Glue was placed in the lock so he could not open his locker. The words "nigger scab" were written on his locker. On at least two occasions his coat was removed from his locker. One of those times, during the winter, it was soaked with water and placed in a freezer on the warehouse premises.

Al Bream, one of Daniels' supervisors and the Heinz employee responsible for safety, observed several traps set in areas of the warehouse where Daniels worked as a salvage employee for Heinz. Additionally, materials which Daniels had repacked and restacked were repeatedly damaged.

Aware of some of these problems, the warehouse manager posted a notice in February 1979 informing the employees that, if acts of harassment did not stop, those individuals caught in acts of harassment would be subject to immediate dismissal. The harassment continued.

In June 1979, Daniels and Bream observed a Heinz sauce bottle hanging from a stick between two boxes in the warehouse. The bottle was wrapped in paper with the word "Mike" written on it; the bottle had been attached to the stick by securing a noose of string around the neck of the bottle and extending it to the stick. Upon observing this, Daniels left work and was so upset he stayed home from work for two days in protest of the company's failure to provide protection for him. Daniels was suspended by the company for three days for this absence.

Finally, in August 1979, there was a confrontation between Greg Phillips, a Heinz employee and union member, and Daniels. During this confrontation Phillips threatened the life of Daniels. Daniels left work and reported the incident to the police.

In fear for his emotional and physical well-being, Daniels quit his job with Heinz on October 1, 1979.

■ We conclude the record would support a Commission finding that a prima facie case of discrimination by the Union against Daniels on the basis of his race was established.

C. *The Union's contentions.* The Union contends any harassment in these activities was directed at Daniels as a non-union member. The racial overtones of a number of the activities, however, and the fact the activities were isolated in their occurrence to Daniels provides substantial evidence to support the Commission's finding of racial discrimination and harassment.

The Union asserts that even if the acts were discriminatory it should not be held responsible since the actions taken by union members were in their capacity as individuals, not as agents or employees of the Union.

The Union was Daniels' bargaining representative irrespective of his union membership status due to the fact the Union represented his bargaining unit. 29 U.S.C.A. § 159; *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048, 1057–58 (1953). The Union was a "labor organization" under the terms of section 601A.2(4). The parties appear to assume that for the purposes of section 601A.6(1)(b) Daniels, as a member of the bargaining unit, was a "member" of the "labor organization" or petitioner Union. The Union does not contend to the contrary. Rod Hanson, the union steward, was the individual who would have dealt with the company in the first step if a grievance by Daniels arose. Both Hanson and the Union concede that if Daniels had a grievance about the way he was being treated at Heinz, he would have had to approach Hanson to deal with the company.

In the record Hanson repeatedly acknowledged his prejudice toward blacks. Likewise, he admitted his posting of the derogatory cartoons and notices on the union bulletin board. The Union contends that Hanson's actions were taken as an individual and, even if they were not, the Union is not responsible for the acts of a union steward because he is not an employee or agent.

■ An individual in Michael Daniels' position would have been unable to determine which, if any, of Hanson's actions were made as an individual. Daniels knew that if he were discriminated against, his first line of support and investigation was the union steward. What then was he to do when the person discriminating against him was that union steward? By virtue of Hanson's position, Daniels could assume Hanson was acting in his capacity as union steward, not simply as an individual. *See Mullett v. NLRB,* 571 F.2d 1292, 1294 (4th Cir.1978); *see also NLRB v. Local Union No. 3, International Brotherhood of Electrical Workers,* 467 F.2d 1158, 1160 (2d Cir.1972) (steward had apparent authority to act on behalf of union). A union steward, such as Hanson, simultaneously wears two hats—one as an individual and one as an agent for the union. *Newman v. Local 1101, Communications Workers of America,* 597 F.2d 833, 835 (2d Cir.1979); *Mullett v. NLRB,* 571 F.2d at 1294; *Pree v. Stone & Webster Engineering Corp.,* 607 F.Supp. 945, 951 (D.Nev.1985).

■ Since Hanson was an agent of the Union and there was substantial evidence to support the conclusion that he acted discriminatorily toward Daniels, we uphold the agency and district court's conclusions of union responsibility for his acts.

Several acts which cannot be attributed to Hanson also served as a basis for Daniels' complaint. We must determine if the Union is responsible for those discriminatory acts under Iowa Code section 601A.6(1)(b). The Union argues that it took affirmative actions to curtail the acts of harassment. It also investigated grievances filed by four employees, including Hanson, arising out of the issuance of warning letters to those Heinz employee-union members for their part in the acts of discrimination towards Daniels. It further argues that it received no complaint or

grievance from Daniels until his complaint was filed with the Commission in July of 1979.

The Commission asserts the Union took no effective action to determine if Daniels was the victim of racial harassment, to determine who was responsible for the acts, to punish those found responsible, to deter similar behavior, and to assure the racial harassment would stop. It argues that even if Daniels did not contact the Union about the harassment until July, the Union through its business agents actually knew of the harassment as early as February when the company contacted the Union and posted notices about the harassment at the warehouse.

It is clear from the evidence presented before the hearing officer the Union was aware of the harassment long before Daniels filed his complaint with the civil rights commission. The Union received letters from the company about the acts of racial harassment during the spring of 1979. It was present at a company investigation of the discriminatory acts directed at Michael Daniels. Further, the business manager of the Union was aware of the racially derogatory cartoons placed on the bulletin board and did nothing concerning the matter.

Armed with this knowledge the Union, through Will Ewarts and Mel Smith, the Union's business managers, made vague warnings to the members of Local 238. The Union did not proceed with an investigation until four union members had been issued warning letters by Heinz for their involvement in the discriminatory acts. The Union had been allowed to sit in on the company investigation of the acts of discrimination which resulted in the issuance of the warning letters.

The Union's investigation then focused on the grievances of the union members who had been warned and did not directly address the assertions made by Daniels. Even after the determination that the warnings should stand and Hanson's admission of some of the acts, the Union did nothing to remove Hanson or to discipline him in the performance of his duties as union steward.

■ Section 601A.6(1)(b) clearly states the Union is responsible for the discriminatory acts of its employees, agents or members. To hold the Union responsible it may be necessary to show it had knowledge of the acts and failed to take action to alleviate the discrimination. That showing can be made by the demonstration of direct contact between the complainant and the Union about the discriminatory acts or by the demonstration of such a pervasive scheme of harassment that actual or constructive knowledge can be inferred. *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir.1982).

The evidence presented to the hearing officer established that the Union's business manager knew of the harassment. The Union failed to act on that knowledge and investigate and terminate the discriminatory acts. It can be held responsible for the knowledge its agents and employees had and upon which they failed to act. *Cf. Munford v. James T. Barnes & Co.*, 441 F.Supp. 459, 466 (E.D.Mich.1977) (employer responsible for discriminatory acts of supervisor when it failed to investigate and "deal appropriately with the offending personnel").

■ Based on the record as a whole, we agree with the district court that the Union has failed to dispel the presumption of discrimination against Daniels and that substantial evidence supports the Commission's decision. Therefore, we affirm the district court's ruling upholding the Commission's decision that the Union acted discriminatorily toward Daniels on the basis of his race.

II. *Emotional distress damage award by the Commission.* The Union raises three assignments concerning the Commission's award of emotional distress damages. First the Union asserts the award of compensatory damages by an agency deprives the Union of its constitutional right to a jury trial. Iowa Const. art. I, § 9. It also argues the Commission does not have

the authority to award either compensatory or emotional distress damages.

A. *Error preservation.* The Commission asserts error was waived on these issues. It contends error must be preserved at the agency level, not on judicial review in district court. *See* Iowa Code § 601A.17(4); 240 Iowa Admin. Code. 1.9(12).

In *Chicago & Northwestern Transportation Co. v. Iowa Transportation Regulation Board,* 322 N.W.2d 273, 276 (Iowa 1982), we stated that raising an issue in a petition for judicial review for the first time does not preserve it. In order to preserve error, the issue must be raised before the agency. *Id.*

■■■ We agree with the district court's ruling that error was not preserved by the Union before the Commission on its contentions concerning the deprivation of its right to a jury trial and on its general challenge to the Commission's authority to award compensatory damages.[1]

We disagree with the district court's conclusion that error was not preserved on the Union's challenge to the Commission's authority to award emotional distress damages. We believe error was minimally preserved.

B. *Authority to make award for emotional distress.* The Union asserts it is not proper for an award of emotional distress damages to be made by an administrative agency.

The Commission argues the authority for the award of emotional distress and punitive damages can be found in Iowa Code section 601A.15(8) which allows the Commission "to take the necessary remedial action as in the judgment of the commission will carry out the purposes of this chapter." The Commission more specifical-

ly refers to subsection 601A.15(8)(a)(8) which states that "remedial action" includes but is not limited to:

> Payment to the complainant of damages for an injury caused by the discriminatory or unfair practice which damages shall include but are not limited to actual damages, court costs and reasonable attorney fees.

Under chapter 601A, the Union contends the Commission's authority is limited because the legislature failed to provide expressly for the award of emotional distress damages by the agency. *See* 67 G.A. House Journal 1575 (1978) (amendment proposed and rejected which expressly included the consideration of "emotional distress and humiliation" in the computation of actual damages).

The Commission requests this court to give the language "damages shall include but are not limited to actual damages," Iowa Code section 601A.15(8)(a)(8), its ordinary and usual meaning. It argues that actual damages are to be paid to an individual unlawfully discriminated against to restore the person to the position in which he would have been had the discrimination not occurred. *Foods, Inc. v. Iowa Civil Rights Commission,* 318 N.W.2d 162, 171 (Iowa 1982). Since emotional distress is an injury causing damage, the Commission contends it has the authority to award emotional distress damages to a claimant.

■■■ We recognize the Iowa Civil Rights Act is to be liberally construed to eliminate unfair and discriminatory acts and practices in employment. Iowa Code § 601A.18. "Actual damages" is defined as "the amount awarded to a complainant in compensation for his actual and real loss or injury." Black's Law Dictionary 352 (5th ed. 1979). A federal court interpreting Iowa law recognized emotional distress

---

1. Although we need not address it, we note that other jurisdictions allow the award of compensatory damages by an administrative agency. *See Harvard v. Bushberg Brothers,* 137 N.J.Super. 537, 541, 350 A.2d 65, 68–69 (1975); *Zahorian v. Russell Fitt Real Estate Agency,* 62 N.J. 399, 406, 301 A.2d 754, 763 (1973); *Batavia Lodge No. 196, Loyal Order of Moose v. New York State Division of Human Rights,* 35 N.Y.2d 143, 146, 316 N.E.2d 318, 319, 359 N.Y.S.2d 25, 26–27 (1974); *State Commission for Human Rights v. Speer,* 29 N.Y.2d 555, 556, 272 N.E.2d 884, 884, 324 N.Y.S.2d 297, 297 (1971); *Williams v. Joyce,* 4 Or.App. 482, 500, 479 P.2d 513, 522 (1971). *See generally* Annot., 85 A.L.R.3d 351 (1978).

damages are compensatory in *Amos v. Prom, Inc.*, 115 F.Supp. 127, 132 (N.D.Iowa 1953). The court stated damages for emotional distress, unaccompanied by any physical trauma, can be awarded where the discriminatory act is intentional or willful. *Id.*

Several other states allow the recovery of emotional distress damages for racial discrimination. *See generally* Annot., 40 A.L.R.3d 1290 (1971). Four courts have upheld the award of emotional distress damages by administrative agencies. *Massachusetts Commission Against Discrimination v. Franzaroli*, 357 Mass. 112, 115, 256 N.E.2d 311, 313 (1970); *Zahorian*, 62 N.J. at 416, 301 A.2d at 763; *Batavia Lodge No. 196*, 35 N.Y.2d at 146, 316 N.E.2d at 319–20, 359 N.Y.S.2d at 27; *Speer*, 29 N.Y.2d at 557, 272 N.E.2d at 884, 324 N.Y.S.2d at 297; *Williams v. Joyce*, 4 Or.App. at 504–05, 479 P.2d at 524. *Contra Zamantakis v. Commonwealth*, 10 Pa. Commw. 107, 117, 308 A.2d 612, 616–17 (1973).

■ We agree with those jurisdictions allowing the award of emotional distress damages by the civil rights commission or its equivalent. This result seems only natural because emotional distress is generally a compensable injury, and the language of the statute allows actual damages which are synonomous with compensatory damages. Allowing the award of emotional distress damages is also consistent with the commission's discretion in fashioning an appropriate remedy under section 601A.15(8). *See Foods, Inc.*, 318 N.W.2d at 171.

A troublesome question exists as to the showing necessary in order to allow emotional distress damages in a civil rights commission contested case. The Union only contended that a causal connection did not exist between its alleged wrongful acts and Daniels' emotional distress. The Union made no other assertions as to the proof necessary or essential elements concerning an emotional distress award. We pass the question of whether a civil rights complainant must show outrageous con-

duct, as required in the tort cases, in order to prevail on his claim for emotional distress damages. Some jurisdictions, however, have addressed the problem. *See Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 498–99, 468 P.2d 216, 218–19, 86 Cal. Rptr. 88, 90–91 (1970) (requiring a showing of outrageous conduct); *Gray v. Serruto Builders, Inc.*, 110 N.J.Super. 297, 315, 265 A.2d 404, 414 (1970) (recovery allowed because emotional distress was proximately caused by racial discrimination); *Williams v. Joyce*, 4 Or.App. at 495, 479 P.2d at 519 (allowing recovery of emotional distress damages for injury proximately caused by racial discrimination). *See generally* Restatement (Second) of Torts § 46 (1965).

The district court upheld the agency award of emotional distress damages on judicial review. The court concluded that substantial evidence existed in the record to show the Union's discriminatory acts were the basis for and connected with Daniels' emotional distress. Specifically, Daniels suffered headaches for which he sought medical treatment. He was suspended from work and finally quit his job in fear for his physical and emotional well-being. Daniels was subjected to threats and harassment for ten months. His headaches and anxiety disappeared within weeks of the severance of his employment at Heinz. On appeal the Union does not challenge the amount of the award.

■ The Union only attacked the Commission's emotional distress award on the bases of deprivation of a jury trial, lack of express statutory authority to make such an award, lack of causal connection between the Union's acts and Daniels' emotional distress, and the absence of bad faith in the Union's acts. We find no merit in these contentions. Therefore, we affirm the district court ruling that upheld the Commission's emotional distress award.

III. *Exemplary damages.* The Union raises two contentions concerning the Commission's award of exemplary damages. First the Union asserts the award of exemplary damages by the agency deprives the

Union of its constitutional right to a jury trial. Iowa Const. art. I, § 9. It also argues the Commission does not have the statutory authority to award punitive damages.

■ A. *Error preservation.* Initially, the Commission asserts the Union did not preserve error on these issues.

In order to preserve an error for appeal, the issue must be raised before the agency. *Chicago & Northwestern Transportation Co. v. Iowa Transportation Regulation Board,* 322 N.W.2d at 276. We agree with the district court's conclusion that error was not preserved by the Union before the Commission on its constitutional jury deprivation challenge to the punitive damage award.

We must next determine if the Union preserved error on the Commission's authority to award exemplary damages under section 601A.15(8)(a)(8). We disagree with the district court, finding error on this issue minimally preserved by the Union at the time of its appearance before the Commission and in its exceptions to the hearing officer's proposed findings and conclusions.

B. *Authority for the award.* The Commission asserts that the language "damages shall include but are not limited to actual damages" in Iowa Code section 601A.15(8)(a)(8) implicitly provides authority for the award of punitive damages. The Commission cites *Amos v. Prom, Inc.,* 115 F.Supp. 127, for the proposition that intentional violations of the civil rights statute require an award of punitive damages. This case, however, preceded the Iowa Civil Rights Act.

A later federal court decision interpreting Iowa law predicted this court would not allow an award of punitive damages under the Iowa Civil Rights Act. *High v. Sperry Corp.,* 581 F.Supp. 1246, 1247 (S.D.Iowa 1984). That court reasoned that "the phrase 'not limited to actual damages' in the Iowa statute [Iowa Code section 601A.15(8)(a)(8) ] does not necessarily imply the availability of punitive damages." *Id.* The court went on to state that it could not find a single instance where an administra-

tive agency's award of punitive damages was upheld. *Id.* at 1248. The court acknowledged a different result might be reached if the express language of the statute granted the Commission the power to award punitive damages. *Id.*

We have also searched for cases allowing an administrative agency award of punitive damages to stand. The general rule is that an administrative agency cannot award punitive damages absent express statutory language allowing such an award. *See Gutwein v. Easton Publishing Co.,* 272 Md. 563, 575, 325 A.2d 740, 746 (1974); *City of Minneapolis v. Richardson,* 307 Minn. 80, 91, 239 N.W.2d 197, 204 (1976) (award allowed to stand in light of express authority to award punitive damages); *Ohio Civil Rights Commission v. Lysyj,* 38 Ohio St.2d 217, 222, 313 N.E.2d 3, 7 (1974); *Zamantakis v. Commonwealth,* 10 Pa.Commw. at 117, 308 A.2d at 615; *Browning v. Slenderella Systems,* 54 Wash.2d 440, 451, 341 P.2d 859, 865 (1959).

We see no reason to differ from this settled rule of law. The Iowa Civil Rights Act does not give the Commission the express authority to award punitive damages. The language "but not limited to actual damages" in section 601A.15(8)(a)(8) does not necessarily imply punitive damages are available. *High v. Sperry Corp.,* 581 F.Supp. at 1247. While the legislature broadened the remedial scope of the Commission's powers in 1978, the express language of the revision referred to actual damages and not specifically to punitive damages. 1978 Iowa Acts ch. 1179.

■ We conclude the Commission is not authorized to award punitive damages to a civil rights complainant. Therefore, we reverse the contrary ruling of the district court.

IV. *Disposition.* In summary, (1) we affirm the ruling of the district court and uphold the Commission's decision finding racial discrimination by the Union and awarding damages for emotional distress against the Union; and (2) we reverse the district court's ruling and conclude the

Commission had no statutory authority to award punitive damages against the Union.

AFFIRMED IN PART AND REVERSED IN PART.