UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

WAYNE J. GRIFFIN ELECTRIC,
INCORPORATED,
*Petitioner,*

v.

NATIONAL LABOR RELATIONS BOARD,
*Respondent,*

No. 01-2258

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, Local 103,
*Intervenor-Respondent.*

NATIONAL LABOR RELATIONS BOARD,
*Petitioner,*

v.

No. 01-2423

WAYNE J. GRIFFIN ELECTRIC,
INCORPORATED,
*Respondent.*

On Petition for Review and Cross-Application for
Enforcement of an Order of the National Labor Relations Board.
(1-CA-34180, 1-CA-34280, 1-CA-34346, 1-CA-34478)

Argued: April 4, 2002

Decided: June 7, 2002

Before WIDENER, WILKINS, and KING, Circuit Judges.

_____

Petition for review denied, and cross-application for enforcement
granted, by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Dion York Kohler, JACKSON, LEWIS, SCHNITZLER & KRUPMAN, Atlanta, Georgia, for Griffin Electric. William M. Bernstein, Senior Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board. Burton E. Rosenthal, SEGAL, ROITMAN & COLEMAN, Boston, Massachusetts, for Union. **ON BRIEF:** Jonathan J. Spitz, JACKSON, LEWIS, SCHNITZLER & KRUPMAN, Atlanta, Georgia, for Griffin Electric. Arthur F. Rosenfeld, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Frederick Havard, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board. Elizabeth A. Sloane, SEGAL, ROITMAN & COLEMAN, Boston, Massachusetts, for Union.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Petitioner Wayne J. Griffin Electric, Incorporated seeks review by this Court, pursuant to 29 U.S.C. § 160(f) of the National Labor Relations Act, of the Decision and Order of the National Labor Relations Board entered on September 27, 2001. By its Order, the Board concluded that Griffin Electric had engaged in various unfair labor practices, and it directed Griffin Electric to cease and desist from violating the Act. The Board has cross-appealed for enforcement of its Order. Finding no error, we deny the petition for review and we enforce the Order of the Board.

## I.

### A.

Griffin Electric is in the building construction business, and it is one of the largest non-union contractors in the northeastern United States. Wayne Griffin ("Mr. Griffin"), who founded Griffin Electric more than twenty years ago, continues to serve as its President, and he is closely involved in all aspects of its operations, including the promotion and discipline of employees.

The organization and structure of Griffin Electric is relatively straightforward. Reporting directly to Mr. Griffin is Gerald Richards, the company's Operations Manager, who is responsible for supervision of the various Griffin Electric Project Managers. The Project Managers work out of Griffin Electric's headquarters in Holliston, Massachusetts, and they are responsible for oversight of its ongoing construction projects. Reporting to the Project Managers are Project Foremen, who are present at each job site to supervise day-to-day operations. The responsibilities of the Project Foremen include: interacting with subcontractors; coordinating and assigning work to jobsite employees; conducting safety meetings; preparing and collecting time sheets, leave requests, and other paperwork; and reporting violations of work rules to company headquarters.

### B.

The controversy underlying this proceeding had its genesis in the summer of 1995, just before Griffin Electric was scheduled to build the Suffolk County Courthouse in Boston, Massachusetts. Griffin Electric had previously negotiated project labor agreements with the International Brotherhood of Electrical Workers, Local 103, AFL-CIO (the "Union"), and it attempted to do so with respect to the Suffolk County Courthouse project.[1] Negotiations failed, however, and in early 1996 the Union began an organizing campaign at Griffin Electric's Massachusetts job sites. In its campaign, the Union utilized four of its long-time members who were also Griffin Electric employees.

---

[1] A "project labor agreement" establishes work rules, wages, and benefits for all employees, regardless of union affiliation.

One of the Union's campaign weapons was the procedure known as "union salting," by which its members and organizers ("salts") sought employment with Griffin Electric for the purpose of creating pro-union sentiment.[2]

Griffin Electric became aware of the Union organizing campaign on May 31, 1996, when some of its union-affiliated employees staged a walk-out. Along with non-employee union sympathizers, these employees picketed several of the company's job sites in Massachusetts. In response to the organizing campaign, Mr. Griffin promptly visited several of Griffin Electric's construction sites. During these visits, he met with non-picketing employees, both individually and in small groups, and he expressed his distaste for the union organizing effort. Among other assertions, Mr. Griffin advised employees that unionization would result in current employees being "out on the bench," because they would be replaced by workers on the Union's out-of-work list. He also claimed that Griffin Electric "would never be Union," and he advised employees that, if they had already signed union authorization cards, "I can tell you, if you call me, whom to send a letter requesting your card back." Finally, Mr. Griffin advised his employees that signing a union authorization card would be like "stabbing him in the back." On June 6, 1996, the Union concluded its six-day "walk-out" and picketing effort.

## C.

In June of 1996, the Union filed its "Charge Against Employer," with the Board, alleging various unfair labor practices against Griffin Electric. On March 12, 1997, the Board issued a complaint against

---

[2]In our recent decision in *Aneco Inc. v. N.L.R.B.*, 285 F.3d 326, 328 (4th Cir. 2002), Judge Luttig described salting as the process "where union organizers seek to become employees of a company targeted by the union," and they work for the targeted employer "as long as there is a prospect of success at organizing its workers." The Board has utilized a similar definition of salting. *See Robert Geller*, Decision, 16-CA-21363, 2002 WL 464548 (March 22, 2002) (describing "salting" as "the Union's practice of sending members or organizers to nonunion employers [to] seek[ ] employment" for the purpose of "organizing the employer").

Griffin Electric, asserting numerous violations of the Act. Griffin Electric promptly filed its answer to those charges, denying that it had violated the Act and, in the alternative, asserting affirmative defenses. The charges were tried in early 1998 before an administrative law judge (the "ALJ") in Boston, and the ALJ concluded that Griffin Electric had committed various unfair labor practices in violation of §§ 8(a)(1) and (3) of the Act.[3] *Wayne J. Griffin Electric, Inc.*, Decision, JD(NY)-4-99, (Feb. 4, 1999) (the "ALJ Decision").[4] A three-member panel of the Board then affirmed the ALJ Decision.[5] *Wayne J. Griffin Electric, Inc.*, 335 N.L.R.B. No. 104 (Sept. 27, 2001) (the "Order").

The Board supported its conclusion that Griffin Electric had engaged in unfair labor practices, in contravention of §§ 8(a) (1) and (3) of the Act, with detailed findings of fact. These factual findings include the following:

- On February 20, 1996, the company distributed a memorandum to its employees asking them to "[p]lease let [Mr. Griffin] know of any situations you experience which are union based activities, as we are attempting to track the location and frequency of such issues."

- Griffin Electric distributed a second memorandum to its employees on March 21, 1996, which drew attention to recent union activity and stated that Mr. Griffin "would

---

[3]An employer engages in an unfair labor practice in violation of § 8(a)(1) when it "interfere[s] with, restrain[s], or coerce[s] employees in the exercise of the rights guaranteed [by the Act]." It engages in an unfair labor practice in contravention of § 8(a)(3) if it "discriminat[es] in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization."

[4]The ALJ Decision ruled in favor of Griffin Electric on several of the allegations of the complaint. The Board does not challenge any of the dismissed allegations.

[5]Because the Board adopted the ALJ Decision without modification, the findings and conclusions of the Board are those made in the ALJ Decision.

appreciate hearing of any other union activity that you may become aware of."

- In June and July 1996, Mr. Griffin instructed Sean Schultheis that he was sending Boylan, a known union member, to Schultheis's job site and that Schultheis should assign "someone you can trust to keep an eye on him." Mr. Griffin also advised Schultheis that "it's not too late to get the [union] cards back," and he suggested that Schultheis try to find out which employees had signed union cards. Finally, after Schultheis was seen eating lunch with a known union member, Mr. Griffin suggested that associating with union sympathizers would negatively impact Schultheis's opportunities for advancement with the company.

- Mr. Griffin met with an employee, Steven Kinsella, in September 1996 to discuss the possibility of a pay raise. During this meeting, Kinsella complained that he was getting a "bum rap" because of a rumor that he had signed a union card. Mr. Griffin retorted that "[D]id your mother ever tell you that you were judged by who you hang about with" and, at the conclusion of the meeting, awarded Kinsella a pay raise. From this interaction, the Board found that Kinsella could reasonably believe that Mr. Griffin was monitoring his union activity, and that the pay raise was part of a "carrot and stick" approach to discourage employees from exercising their rights under the Act.

- In December 1996, Mr. Griffin spoke with Schultheis in reference to the Union's charges. He stated that "f-king with his company [was like] with f-king with his kids." In this conversation, Mr. Griffin also asked Schultheis "if he would rather have the money spent on NLRB charges [or] in his profit sharing [plan]."

After making these and other findings, the Board proceeded to consider whether those findings constituted unfair labor practices. After so doing, the Board concluded that Griffin Electric had committed

both §§ 8(a)(1) and (3) violations, and it entered its cease and desist order.

On October 16, 2001, Griffin Electric filed its petition for review with this Court. On December 3, 2001, the Board cross-applied for enforcement of the Order, and the Union subsequently intervened in support of the Board. We possess jurisdiction pursuant to 29 U.S.C. § 160(f), and venue is proper because Griffin Electric transacts business and resides in this circuit.

## II.

We review an order of the Board to determine if it is supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474 (1951). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *N.L.R.B. v. Peninsula Gen. Hosp. Med. Ctr.*, 36 F.3d 1262, 1269 (4th Cir. 1994) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 217 (1938)). We have observed that "while 'substantial evidence' is more than a scintilla, it may also be less than a preponderance." *Grinnell Fire Prot. Sys. Co. v. N.L.R.B.*, 236 F.3d 187, 195 (4th Cir. 2000) (internal citations omitted). Moreover, we accord due deference to the reasonable inferences the Board draws from the evidence, *N.L.R.B. v. Brown*, 380 U.S. 278 (1965), regardless of whether, in the first instance, we might have reached a different conclusion. *Universal Camera*, 340 U.S. at 488. And we will affirm the Board's application of law to the underlying facts so long as its application is "reasonable and consistent with the Act." *Grinnell Fire*, 236 F.3d at 195 (citing *N.L.R.B. v. Yeshiva Univ.*, 444 U.S. 672, 691 (1980)).

## III.

By its petition for review, Griffin Electric has raised twenty-four issues, each of which challenges the sufficiency of the evidence or asserts legal error. After careful consideration of these multiple assignments of error, we are comfortable rejecting all but two on the basis of the ALJ Decision and the Board's Order. *Wayne J. Griffin Electric, Inc.*, 335 N.L.R.B. No. 104 (Sept. 27, 2001); *Wayne J. Griffin Electric, Inc.*, Decision, JD(NY)-4-99, (Feb. 4, 1999). The remain-

ing two contentions warrant additional discussion. First, Griffin Electric maintains that the Board erred by treating "salts" more favorably than other Griffin Electric employees. Second, it contends that the Board incorrectly attributed to it the statements of certain of its Project Foremen, mistakenly deciding they were agents of the company. We address these contentions in turn.

A.

Griffin Electric first contends, in substance, that the Board was partial to the Union and acted improperly in this case. It asserts, in particular, that the Order in "[t]he present case reflects the Board's continued pattern of improperly applying agency policies and procedures in a manner that inappropriately favors union salting." To the contrary, however, there is no evidence that the Board engaged in improper conduct of any kind. First, in making its findings, the Board did not blindly credit the testimony of union sympathizers. For example, before finding that Mr. Griffin had suggested to his employees that unionization would result in job losses, the Board carefully considered his testimony, as well as that of James Lexner, Schultheis, and Kinsella. After review, it chose to credit the testimony of Schultheis and Kinsella because they "had nothing to gain from the outcome of the proceeding," while declining to credit Lexner, a union organizer, and Mr. Griffin, each of whom had a stake in the result. Order at 14.

Secondly, the evidence reflects that the Board acted reasonably, and in accordance with the Act, in concluding that Griffin Electric had engaged in a litany of unfair labor practices. *See Grinnell Fire Prot. Sys. Co. v. NLRB*, 236 F.3d 187, 195 (4th Cir. 2000). For example, the Board concluded that Griffin Electric violated § 8(a)(1) when Mr. Griffin equated signing a union authorization card to "stabbing him in the back." Before reaching this conclusion, it considered the testimony of several witnesses, including Mr. Griffin; it explained the rationale underlying its credibility determinations; and it assessed the likely impact of Mr. Griffin's statement on the willingness of employees to exercise their rights under the Act. Only after conducting this analysis, and after considering the emphasis that Mr. Griffin placed on loyalty, did the Board conclude that Mr. Griffin's statement could reasonably be understood as a threat. Because Griffin Electric has

failed to establish any misconduct on the part of the Board, we see this contention as groundless.

## B.

Griffin Electric next contends that the Board erred in concluding that its Project Foremen were agents of the company, thereby rendering their statements and actions attributable to it. If Griffin Electric were correct in this contention, then several of the unfair labor practices found by the Board would be unsupported by substantial evidence and therefore erroneous. We, however, agree with the Board's analysis, and we thus reject Griffin Electric's contention.

Under the Act, it is not necessary for a person to possess actual authority in order for an agency relationship to exist. *See N.L.R.B. v. Local Union 1058, United Mine Workers of Am.*, 957 F.2d 149, 152 (4th Cir. 1992) (stating that "[s]ection 2(13) of the Act provides that actual authority is not determinative of agency"). Instead, the Act "simply incorporates the common law of agency, including the concepts of implied and apparent authority." *Id.* (citing *Mullett v. N.L.R.B.*, 571 F.2d 1292 (4th Cir. 1978)). And we have recognized that "[a]pparent authority is created through a manifestation by the principal to a third party that supplies a reasonable basis for the latter to believe that the principal has authorized the alleged agent to do the acts in question." *Id.* (citations omitted).

In this case, the Board determined that "[t]he overwhelming weight of the evidence . . . establishes that . . . [the] [F]oremen are agents of" Griffin Electric. Order at 4. In support of this determination, the Board found, inter alia, that the Project Foremen:

- are generally the only representative of Griffin Electric at a job site;

- regularly interact with subcontractors;

- coordinate the work of Griffin Electric employees at a job site;

- conduct regular safety meetings with employees;

- collect time sheets, leave requests, and other paperwork, and they transmit this paperwork to the main office;

- evaluate the performance of employees and crews; and

- inform Project Managers of violations of work rules.

Based on the findings, the Board concluded that Griffin Electric "employees would reasonably believe that their foreman was acting on behalf of management with respect to . . . [his] communications or instructions relating to their work or [Griffin Electric's] policies and procedures." *Id.* Because the Board's conclusions are reasonable, and because its findings are supported by substantial evidence, there is no error in its conclusion that Griffin Electric's Project Foremen were agents of the company and that their statements and acts were attributable to Griffin Electric.

## IV.

For the foregoing reasons, we deny Griffin Electric's petition for review, and we grant the Board's cross-application for enforcement of its Order.

*PETITION FOR REVIEW DENIED AND*
*CROSS-APPLICATION FOR ENFORCEMENT GRANTED*